79 N.J. Super. 379 (1963)
191 A.2d 758
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT GROVER WEST, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1963.
Decided June 7, 1963.
*381 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. B. Braddock Dinsmore, Jr. argued the cause for appellant.
Mr. Joseph P. Merlino, Assistant Prosecutor, argued the cause for respondent (Mr. Stanley E. Rutkowski, Mercer County Prosecutor, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
This is an appeal from the denial of defendant's demand that he be discharged from confinement in the Mercer County Jail, and from a verbal order directing the extradition of defendant to the Commonwealth of Pennsylvania, both as shown on the minutes of the Mercer County Court.
*382 The underlying facts, as narrated in defendant's brief, are not contested by the State. They are substantially as follows: The defendant was arrested in the City of Philadelphia, Pennsylvania, in February 1961 upon criminal charges for crimes alleged to have been committed by him in the Commonwealth of Pennsylvania and also on warrants issuing from authorities in the State of New Jersey on criminal charges pending against him there.
He claims that he was told by police officers in the Commonwealth of Pennsylvania that if he would sign a written confession concerning the charges outstanding against him in Pennsylvania, and also a waiver of extradition to the State of New Jersey to be tried upon the charges pending against him there, he could upon the completion of these trials request that he be returned to the Commonwealth of Pennsylvania for the purpose of arraignment and trial on the charges pending against him there. He claims that he was told that in the event he should be convicted of one or more charges in both jurisdictions, it was likely that the sentence imposed in Pennsylvania would be made to run concurrently with that imposed in the State of New Jersey; and also that because of his cooperation in this manner he might expect to receive a more lenient sentence in the event of his conviction than would otherwise be the case.
Defendant gave a written confession regarding the offenses alleged to have been committed by him in the Commonwealth of Pennsylvania and signed a waiver of extradition to the State of New Jersey. Thereupon, he was delivered to the authorities in Mercer County. He was tried upon the charges pending against him there, convicted, and sentenced in April 1961. The sentences imposed were three terms of one year each to be served concurrently. He was committed to the Mercer County Workhouse on April 28, 1961, and remained there until the expiration of his sentences on December 26, 1961, credit being given for good behavior. He was then transferred to the Mercer County Jail where he is presently confined awaiting disposition of detainers which had been *383 lodged against him by the Commonwealth of Pennsylvania on March 3, 1961.
A warrant for the arrest of the defendant was signed by the Governor of New Jersey on January 23, 1962, in compliance with a requisition for extradition executed by the Governor of Pennsylvania on December 22, 1961. Thereafter, defendant filed a complaint in the Law Division demanding a writ of habeas corpus, and his discharge from custody. The matter was referred to the Mercer County Court and a hearing thereon resulted in the determination from which this appeal was taken.
The gist of defendant's argument below, repeated here, is that the Pennsylvania indictments became null and void because of a failure on the part of New Jersey authorities to comply with the provisions of the Interstate Agreement on Detainers Act, N.J.S. 2A:159A-1, L. 1958, c. 12, effective April 18, 1958. Hence, argues defendant, since the Pennsylvania indictments had ceased to exist, the requisition for extradition lacked the indispensable foundation of a pending criminal charge in the demanding state. The trial court held, we think correctly, that it was without jurisdiction to determine, or even to question, the validity or subsistence of the Pennsylvania indictments, this being, in the first instance, the exclusive prerogative of the Pennsylvania court in which these indictments had been returned.
N.J.S. 2A:159A-1 et seq. represents the legislative validation of an agreement between the executive branches of the governments of New Jersey and Pennsylvania, and grants to such agreement the force of law.
The agreement is the product of a lengthy study of the Council of State Governments. The objectives sought to be attained by it clearly appear in the findings and statement of policy set out in N.J.S. 2A:159A-1. See People v. Esposito, 201 N.Y.S.2d 83, 88 (Cty. Ct. 1960). N.J.S. 2A:159A-1 provides:
"* * * The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations or *384 complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party States also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures." L. 1958, c. 12, p. 34 § 1 (Art. I).
The legislation adopting the agreement is obviously remedial in character and, thus, by familiar principle should be construed liberally in favor of the prisoner.
Art. III (a), N.J.S. 2A:159A-3(a), in pertinent part provides:
"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the imprisonment and his request for a final disposition to be made of the indictment, information or complaint * * *. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the State parole agency relating to the prisoner."
Art. III (b) provides:
"The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, * * * having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."
*385 Art. III (c) provides that the warden having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.
Art. III (d) requires that any request for final disposition made by a prisoner pursuant to (a) shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the State to whose prosecuting official the request for final disposition is specifically directed. It provides further that the warden shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the State to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Finally, section (d) provides that if trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.
Art. III (e) provides:
"Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein by reason of paragraph (d) hereof, and a waiver of extradition to the receiving State to serve any sentence there imposed upon him, after completion of his term of imprisonment in the sending State. The request for final disposition shall also constitute a consent by the prisoner to the production of his body in any court where his presence may be required in order to effectuate the purposes of this agreement * * *. Nothing in this paragraph shall prevent the imposition of a concurrent sentence if otherwise permitted by law." (Emphasis added)
It seems not to be disputed that the warden having custody of defendant did not notify him of the source and contents of the detainer lodged against him, and did not inform defendant of his right to request final disposition of the *386 indictment on which the detainer was based, as is required in Art. III (c). The fact is that defendant was informed of the detainer by a social worker. He then wrote to the district attorney of Bucks County, Pennsylvania concerning it. He received an answer from that official containing some of the details, after which he again wrote inquiring of the district attorney whether he could be prosecuted on the outstanding charges as soon as possible. The district attorney then caused to be issued by the Court of Oyer and Terminer, Quarter Session, Bucks County, a writ of habeas corpus ad proscquendum, directed to the warden of the Mercer County Workhouse, where defendant was then confined, to produce defendant in the Pennsylvania court on June 5, 1961. The warden never honored the writ.
We pass the question of the legal sufficiency of various steps taken by defendant to bring into operation the provisions of the uniform act and direct our attention to defendant's main argument. Implicit in that argument is the thesis that in light of the purposes of the agreement, each of the States party thereto assumed, or became bound by, the official acts or omissions of the other. Specifically, it is urged that since the warden of the New Jersey institution failed to fulfill the duties cast upon him by the statute, and thus deprived the defendant of final disposition of the charges laid against him in Pennsylvania within 180 days of the date he requested same, Pennsylvania must suffer the consequences of this omission and defendant is entitled to dismissal of the indictments with prejudice. We need not and do not pass upon the merits of the question thus posed. What concerns us is whether the dismissal may be ordered by a New Jersey court.
The statutory agreement contains no word which may be taken to indicate an intention to confer jurisdiction upon the courts of this State to dismiss indictments laid in the courts of Pennsylvania. Moreover, investing the courts of either state with power to dismiss indictments returned in the other would vastly expand the judicial ambit of the extradition hearing. Under the Uniform Criminal Extradition Law *387 (N.J.S. 2A:160-6 et seq., 19 P.S. Pa. §§ 191.1-191.31) the judicial area of inquiry on the habeas corpus proceeding is limited to whether the extradition request is supported by a colorable allegation of crime in the demanding state, and a showing of the identity of the accused fugitive. In re Trignani, 13 N.J. Super. 306, 311 (Cty. Ct. 1951) See also State v. Phillips, 62 N.J. Super. 70, 74-75 (App. Div. 1960), affirmed per curiam 34 N.J. 63 (1961). We will not attribute to the executive departments of either state, or to the Legislature of this State, an intention to expand the limited jurisdiction of the court, as thus stated, in the absence of an unequivocal statement of such objective.
We think it is clear that the concluding words of Art. III (d), "the court shall enter an order dismissing the same with prejudice," refer to the court of the state in which the indictments are pending. Cf. State v. Chirra, 79 N.J. Super. 270 (Cty. Ct. 1963). This conclusion is fully supported by the language found in Art. V (c), as well as Art. III (a) and Art. IV (a). Consequently, we conclude that the County Court properly declined to entertain defendant's motion, which in effect called upon it to dismiss or nullify indictments charging the commission of crime in a foreign state. The argument here made may be made in the Pennsylvania courts, and relief here sought may be requested therein.
As we have noted, defendant's ultimate conclusion is that the "proceedings must fall because not supported by any indictment, etc., in the demanding State." The fallacy of the argument inheres in the premise that the sanctions of the statute providing for dismissal of indictments if a defendant is not brought to trial within the 180-day period, are self-executing. This is not so. The interstate agreement clearly contemplates a judicial proceeding or act in the receiving state resulting in dismissal of the pending indictments. Until this occurs the continued subsistence of properly attested indictments must be assumed by the courts of the sending state.
*388 Defendant argues also that the extradition proceedings were fatally defective in that the requisite showing of fugitivity was absent. He contends that since he was in custody at all times after his arrest in Pennsylvania, and since the Pennsylvania authorities voluntarily surrendered him to New Jersey, he cannot be said to have "fled" from Pennsylvania. The rule in this State has long been otherwise. In In re Cohen, 104 N.J. Eq. 560, 565 (Ch. 1929), it was held that the Governor's warrant of rendition is prima facie evidence of fugitivity; further that the motive or reasons which brought the departure of the accused from the demanding State are immaterial. We see no reason to depart from the established rule.
Finally, we note an additional reason (not argued by the State) which lends support to the judicial action under review. N.J.S. 2A:159A-3(e) expressly provides that a request for final disposition made by a prisoner pursuant to paragraph (a) shall be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein by reason of paragraph (d). It appears, therefore, that the defendant has no standing to contest the extradition proceedings, having waived such right in order to secure the benefits conferred upon him by N.J.S. 2A:159A.
Affirmed.