[Crim. No. 10997. Third Dist. Apr. 16, 1981.]

In re DANIEL FABRICANT on Habeas Corpus.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney

General, J. Robert Jibson and Gregory W. Baugher, Deputy Attorneys General, for Appellant.

Patricia E. Nelson, Rowan K. Klein and Klein & Nelson for Respondent.

## OPINION

EVANS, J.—The trial court's order quashing California's extradition warrant is reversed. We do so because of the primacy of the provisions of article IV, section 2, clause 2, of the United States Constitution which provides: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." The trial court order effectively denied the State of Florida this constitutional guarantee. The order was predicated upon an erroneous interpretation of the provisions of the interstate agreement on detainers (Pen. Code, § 1389), which codifies an agreement between this state and a majority of the others, including Florida, and the federal government for disposing of charges lodged against persons incarcerated in other jurisdictions.

A preface to our disposition of the matter is the following brief summary of the chronology of events and statement of statutory provisions.

In August 1976, petitioner Fabricant was arrested in Florida on a charge of attempted murder, aggravated battery, and unlawful possession of a firearm by a convicted felon. Before trial in Florida on those charges, Fabricant was charged and convicted in California, and on August 25, 1978, was imprisoned at the California Institute for Men (at Chino). On September 9, 1978, Florida forwarded its warrant to Chino as a detainer. On September 27, 1978, a memorandum advising Fabricant of the detainer was apparently prepared and according to the records at Chino, delivered to him.[1] On March 21, 1979, Florida requested temporary custody of Fabricant for purposes of trial on the Florida charges. Apparently, California failed to process the request and Fabricant was subsequently paroled on August 31, 1979. Upon his

[1]Fabricant asserts he did not receive the memo or any other notification of the detainer.

release he was immediately taken into custody on the Florida detainer. On September 27, 1979, the Florida Governor executed a formal demand for extradition, and on October 24, 1979, the California Governor complied and issued an extradition warrant.

In the Sacramento County Superior Court, Fabricant argued the extradition warrant was invalid because of the failure of California authorities to comply with the provisions of the interstate agreement on detainers requiring his delivery to the demanding state for expeditious trial and disposition of the outstanding charges.

As we examine the provisions and purpose of the interstate agreement on detainers, we have in mind that the right of each state to extradition of a charged felon is constitutionally guaranteed rather than statutory.

In enacting the interstate agreement on detainers, the legislative provisions of Penal Code section 1389 succinctly state its purpose. "[I]t is . . . the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." (Pen. Code, § 1389, art. I.) The pertinent provisions of the codified agreement are, "Article III [¶] (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the war-

den, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

".    .    .    .    .    .    .    .    .    .    .    ".    .    .    .

"Article V [¶] (c) [I]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." (Pen. Code, § 1389.)

These statutory provisions must be examined and harmonized with the extradition clause of the United States Constitution.

The fundamental purposes of article IV, section 2, clause 2, of the United States Constitution has been succinctly stated in *Michigan* v. *Doran* (1978) 439 U.S. 282 [58 L.Ed.2d 521, 99 S.Ct. 530]. "The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. [Citations.] The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states. It articulated, in mandatory language, the concepts of comity and full faith and credit, found in the immediately preceding clause of Art. IV. The Extradition Clause, like the Commerce Clause, served important national objectives of a newly developing country striving to foster national unity." (*Id.*, at pp. 287-288 [58 L.Ed.2d at pp. 526-527].)

The *constitutional provisions providing extradition power* extend to the demanding state a right and a corresponding duty on the asylum state to deliver the requested fugitive. ■ Extradition is not a matter of mere comity between the states as the trial court decision effectively would make it. The role of the judiciary in habeas proceedings on extradition is extremely limited. "Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the de-

manding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable." (*Michigan v. Doran, supra,* at p. 289 [58 L.Ed.2d at p. 527].)

Any other judicial inquiry in the asylum state into the matter exceeds the court's jurisdiction. (*In re Russell* (1974) 12 Cal.3d 229, 234 [115 Cal.Rptr. 511, 524 P.2d 1295]; *In re Golden* (1977) 65 Cal.App.3d 789, 795-796 [135 Cal.Rptr. 512].) ■ The trial court order quashing the governor's extradition warrant exceeded its authority. That order would effectively overrule the decision of *Michigan v. Doran, supra,* 439 U.S. 282, and as between Florida and California, would accomplish the repeal of article IV, section 2, clause 2, of the United States Constitution.[2]

The mandatory dismissal provisions of the interstate agreement on detainers place the requirement of dismissal of the criminal charges in certain instances directly upon the demanding state (Fla.), not the asylum state (Cal.).

Following return of the fugitive pursuant to the extradition warrant, proceedings may be conducted in Florida to determine whether Fabricant's rights provided by the interstate agreement were violated by either California or Florida authorities; if so, the mandatory dismissal provisions of the agreement must be invoked.

The trial court erroneously attempted to exercise its judgment on the question of violation of Fabricant's rights under the interstate agreement on detainers, which are exclusively reserved to the demanding state. It did so by attempting to extend the dismissal provisions (Pen. Code, § 1389, art. V, subd. (c)) of the agreement to include the right to dismiss otherwise valid extradition warrants. The language of the statute is clear, concise, unambiguous, and needs no judicial interpretation. It does not deal with nor authorize dismissal of extradition warrants. The dismissal rights extend to the pending criminal charges only, and are expressly reserved to the "appropriate court of the jurisdiction

[2]In *State of South Dakota v. Brown* (1978) 20 Cal.3d 765 [144 Cal.Rptr. 758, 576 P.2d 473], dealing with the scope of the California Governor's discretion under the extradition act, *supra,* the Supreme Court upheld his power to refuse to issue an arrest warrant in certain limited circumstances. That case is factually and legally inapposite to the instant proceeding.

where the *indictment, information* or *complaint* has been pending . . . ." (Italics ours.) The trial court obviously exceeded its jurisdiction.

The order granting the writ of habeas corpus is reversed.

Regan, Acting P. J., and Paras, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied June 10, 1981. Bird, C. J., was of the opinion that the application should be granted.