Thomas Keith DODSON,
Petitioner-Appellant,

v.

Thomas COOPER, Superintendent,
Shadow Mountain Correctional
Facility, Respondent-Appellee.

No. 84SA315.

Supreme Court of Colorado,
En Banc.

July 8, 1985.

As Modified on Denial of Rehearing
Sept. 3, 1985.

Thomas Keith Dodson, pro se.

David F. Vela, Colorado State Public Defender, Denver, Kenneth M. Plotz, Deputy State Public Defender, Salida, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Appellate Section, Denver, for respondent-appellee.

LOHR, Justice.

In this appeal from the Fremont County District Court, the appellant, Thomas Keith Dodson, challenges the district court's refusal to grant habeas corpus relief to prevent his extradition to Texas. Dodson asserts that extradition is precluded because of noncompliance with the Interstate Agreement on Detainers with respect to the Texas charge that provided the basis for the extradition request. The court held that although the requirements of the Interstate Agreement on Detainers may not have been satisfied, procedures for extradi-

tion had been complied with, and the asserted violation of the detainers agreement did not bar extradition. We affirm the judgment of the district court.

## I.

The facts giving rise to this controversy are not in dispute. On January 20, 1983, Dodson was arrested in California on two outstanding warrants, one from Jefferson County, Colorado, and one from Texas. Dodson waived extradition to Colorado and was returned to Jefferson County for trial in February of 1983. On April 11, 1983, Dodson was sentenced in Jefferson County District Court to eight years imprisonment on a charge of accessory to second degree murder. Because of overcrowding in the state penitentiary, Dodson was held first in the Jefferson County jail, then transferred to the Pueblo County jail, and later returned to Jefferson County before being sent to a correctional facility in Canon City. Dodson testified that he learned of the Texas charge pending against him when he was arrested in California, he discussed the existence of the charge with jail officials in Jefferson and Pueblo counties, and the judge, the prosecutor and Dodson's attorney mentioned the Texas charge during the court proceedings that resulted in his sentence. However, Dodson was not given any information concerning the exact nature of the Texas charge or what he could do to expedite its resolution. On June 6, 1983, Dodson arrived at the Department of Corrections Diagnostic Unit at Canon City. He was served with a copy of the Texas detainer on July 27, 1983.[1] On February 9, 1984, the governor of Colorado issued a warrant for Dodson's extradition, and the appellant then sought relief by habeas corpus.

Dodson contends that the failure of Colorado authorities to advise him promptly of the Texas detainer violated Article III(c) of the Interstate Agreement on Detainers

---

**1.** The record does not establish when Texas filed its detainer in Colorado.

(IAD),[2] and that therefore the detainer should be dismissed and extradition denied. The trial court concluded, however, that it was without authority to dismiss the detainer or the underlying charge that had been brought by the State of Texas, that it was the responsibility of the Texas courts to determine whether the IAD had been violated, and that since an extradition proceeding had been instituted by Texas and the requirements of the Uniform Criminal Extradition Act[3] had been met, the writ of habeas corpus must be discharged.

■ In his appeal to this court, Dodson's principal argument is that Colorado officials breached a duty under Article III(c) of the IAD by failing to provide him promptly with notice of the detainer that had been lodged against him. The record in this case, however, contains no indication that the IAD was violated.[4] Moreover, the record supports the district court's ruling that Texas has complied with the requirements of the Uniform Criminal Extradition Act. We hold that even if the asserted violation of the IAD had been established, interstate transfer of the appellant under the procedures of the extradition act would not be barred. Therefore, the trial court correctly discharged the writ of habeas corpus.

## II.

The IAD and the Uniform Criminal Extradition Act provide two different methods by which a state can obtain custody of a defendant incarcerated in another state.

The extradition act applies to fugitives in general, § 16–19–103, 8 C.R.S. (1978), but the IAD applies only to prisoners, § 24–60–501, Article I, 10 C.R.S. (1982).

■ The purpose of the IAD is "to encourage the expeditious and orderly disposition of ... charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints" so that any uncertainty about the prisoner's status will be dispelled, and rehabilitation and treatment can proceed unhindered. *Id.*[5] A "detainer" is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978); *Cuyler v. Adams,* 449 U.S. 433, 436 n. 3, 101 S.Ct. 703, 706 n. 3, 66 L.Ed.2d 641 (1981); *People v. Moody,* 676 P.2d 691, 693 n. 2 (Colo.1984). The provisions of the IAD are not activated until the "receiving state," the state in which charges against the prisoner are pending, lodges a detainer with the "sending state," the state having custody of the prisoner. *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *People v. Quackenbush,* 687 P.2d 448 (Colo.1984); *People v. Lincoln,* 42 Colo.App. 512, 601 P.2d 641 (1979). Once activated, Article III(c) of the IAD requires the warden or other official having custody of the prisoner to inform him promptly of "the source and contents of any detainer lodged against him and of

**2.** § 24–60–501, 10 C.R.S. (1982).

**3.** § 16–19–101 to –133, 8 C.R.S. (1978).

**4.** As noted above in n. 1, the record does not establish when the detainer was filed in Colorado. The appellant, however, has not contended that he was not informed of the source and contents of that document promptly after it was lodged. Instead, he predicates his entire argument on the assumption that information informally obtained by Colorado law enforcement officials concerning the Texas charges constituted a detainer, bringing the prompt notification requirement of Article III(c) of the IAD into effect. The invalidity of this assumption is established by the plain language of the IAD and the United States Supreme Court's decision in

*United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). *See People v. Yellen,* 704 P.2d 306 (Colo.1985). Consequently, the record suggests no basis for the appellant's argument that his prompt notification rights under Article III(c) of the IAD have been violated.

**5.** The IAD is one of several Colorado statutes that implement the speedy trial rights guaranteed to a defendant under Article II, section 16 of the Colorado Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. *People v. Swazo,* 199 Colo. 486, 489, 610 P.2d 1072, 1074 (1980).

his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based."

After a prisoner has been notified that a detainer has been filed and that he has the right to request final disposition of the charges underlying the detainer, the IAD provides two methods of initiating a transfer of the prisoner to the receiving state for trial. First, the prisoner can request final disposition of the charges. In that event, he effectively waives extradition and must be brought to trial in the receiving state within 180 days. § 24–60–501, Article III(a), (e), 10 C.R.S. (1982). Alternatively, the receiving state may request temporary custody of the prisoner so that he can be prosecuted in the receiving state and then returned to the sending state. § 24–60–501, Articles IV, V, 10 C.R.S. (1982).

Although in this case Texas triggered the operation of the Interstate Agreement on Detainers by lodging a detainer and causing Dodson to be informed of that filing, it appears that no further action was taken under the IAD. Dodson does not contend that he requested speedy disposition of the charges after receiving notice of the detainer, and rather than requesting temporary custody of the prisoner pursuant to Article IV of the IAD, the governor of Texas demanded that Dodson be extradited to stand trial in that state. In accordance with the Uniform Criminal Extradition Act, § 16–19–101 to –133, 8 C.R.S. (1973), the governor of Colorado issued a governor's warrant for Dodson's arrest.

■ Under both the IAD and the extradition act, judicial review of the basis of a transfer is available in the sending state,[6] but is narrowly limited in scope. *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981); *Moen v. Wilson*, 189 Colo. 85, 536 P.2d 1129 (1975). If Texas had requested temporary custody of Dodson pursuant to Article IV of the IAD, Dodson could have challenged the transfer

on the grounds that the requirements of the IAD had not been complied with. *Moen v. Wilson*. However, here Dodson is attempting to challenge compliance with the IAD when, in fact, his transfer has been initiated under the extradition act. This raises the question whether IAD violations can be considered in a proceeding to challenge extradition.

■ The scope of inquiry in a habeas corpus proceeding to challenge extradition is limited to issues concerning: "1) the technical sufficiency of the extradition documents, 2) the identification of the accused, 3) whether the accused has been substantially charged with a crime, and 4) whether the accused is a fugitive from justice." *Pruett v. Barry*, 696 P.2d 789, 791 (Colo. 1985). *Accord Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978) (the seminal case); *Rodriquez v. Sandoval*, 680 P.2d 1278 (Colo.1984). The extradition act was adopted to implement the constitutional duty of states to extradite fugitives. *Michigan v. Doran*. The narrow scope of inquiry at an extradition hearing reflects federal constitutional and statutory limits on the bases for denying extradition that can be recognized by courts in an asylum state. *Michigan v. Doran*, 439 U.S. at 288–89, 99 S.Ct. at 534–35; *Giardino v. Bourbeau*, 193 Conn. 116, 475 A.2d 298, 302 (1984); U.S. Const. art. IV, § 2, cl.2; 18 U.S.C. § 3182. Therefore, in order to determine whether an IAD violation is cognizable by a court in an extradition proceeding, we must decide whether it is relevant to resolution of any of the issues that can be considered at such a hearing.

■ Whether a person is a fugitive from justice and is substantially charged with a crime in the demanding state are two of the inquiries that may be made by an asylum state at an extradition hearing. A fugitive is "[a] person charged by indictment or by affidavit before a magistrate

---

**6.** "Sending state" and "receiving state" are terms used in the IAD, and in the present case describe Colorado and Texas, respectively. Under the Uniform Criminal Extradition Act the state seeking custody is commonly referred to as the "demanding state" and the state in which the fugitive is present is called the "asylum state."

with the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime leaves the State." *Appleyard v. Massachusetts*, 203 U.S. 222, 227, 27 S.Ct. 122, 123, 51 L.Ed. 161 (1906). As long as the charges in the demanding state remain effective, a prisoner in the asylum state is a fugitive and, as well, remains substantially charged with a crime. Thus, the continuing effectiveness of a charge in the demanding state is relevant to the issues of whether the accused . is substantially charged with a crime and whether the accused is a fugitive. It follows that only if noncompliance with the IAD would automatically invalidate the charge in the demanding state, and if the asylum state were empowered to recognize the invalidity of the charge on that basis, would the noncompliance be relevant to the limited issues cognizable in an extradition hearing.

The IAD neither prescribes an express sanction for failure to notify a prisoner promptly of the lodging of a detainer as required by Article III(c), nor specifies whether the receiving state, the sending state, or both, may determine whether that requirement has been met. The IAD does state, however, that if certain other requirements of either Article III or Article IV of the agreement are violated, "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." § 24–60–501, Article V(c), 10 C.R.S. (1982).

■ We have previously held that a violation of the provisions of Article III(c) of the IAD, which mandate prompt notification to a prisoner that a detainer has been lodged, requires dismissal with prejudice of the charge upon which the detainer is based. *Romans v. District Court*, 633 P.2d 477 (Colo.1981); *accord People v. Lincoln*, 42 Colo.App. 512, 601 P.2d 641 (1979).

In *Romans*, however, Colorado was the receiving state and was inquiring whether its own charges were affected by an IAD violation in the sending state. *Romans* did not resolve the issue before us here— whether a sending state can inquire into IAD compliance in an extradition proceeding and hold on the basis of an IAD violation that the underlying charge is invalid, with the result that the person whose custody is sought can no longer be considered "substantially charged" in the receiving state or a fugitive from justice in that state. The majority of states that have addressed the issue have held that this dismissal power belongs to the receiving state; neither the IAD nor any other source authorizes a sending state to dismiss or invalidate a charge underlying a detainer. *In re Fabricant*, 118 Cal.App.3d 115, 173 Cal.Rptr. 245 (1981); *Giardino v. Bourbeau*, 193 Conn. 116, 475 A.2d 298, 304 (1984); *State ex rel. Chamberlain v. Martinco*, 288 Minn. 231, 179 N.W.2d 286 (1970); *State v. West*, 79 N.J.Super. 379, 191 A.2d 758 (1963); *State ex rel. Garner v. Gray*, 59 Wis.2d 323, 208 N.W.2d 161 (1973).[7]

■ We reject the suggestion that Colorado could inquire into the validity of the Texas charges as an impermissible intrusion upon Texas sovereignty. In so holding, we join other courts that have held that IAD violations cannot be asserted as a defense to extradition. *In re Fabricant*, 118 Cal.App.3d 115, 173 Cal.Rptr. 245 (1981) (to inquire into IAD violations in an extradition proceeding would exceed the constitutionally permissible scope of inquiry under U.S. Const. art. IV, § 2, cl.2); *Giardino v. Bourbeau*, 193 Conn. 116, 475 A.2d 298 (1984) (IAD violations cannot be considered in extradition proceedings, because as long as the underlying charge remains, a defendant is a fugitive, and must be extradited); *State v. West*, 79 N.J. Super. 379, 191 A.2d 758 (1963) (asserted violation of Article III(c) of IAD provides

---

**7.** The IAD "is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Cuyler v.* *Adams,* 449 U.S. at 442, 101 S.Ct. at 709. Therefore, in construing the act all state courts necessarily are resolving federal law questions.

no basis for New Jersey Courts to declare Pennsylvania indictments invalid and thus to destroy the element of a pending criminal charge essential to support extradition); *State ex rel. Chamberlain v. Martinco,* 288 Minn. 231, 179 N.W.2d 286 (1970) (in habeas corpus hearing to challenge extradition, the asylum state cannot take cognizance of a claim that the charge in the demanding state is invalid for failure to comply with speedy trial requirements of IAD); *see Baity v. Ciccone,* 379 F.Supp. 552 (W.D.Mo.1974); *Baker v. Schubin,* 72 Misc.2d 413, 339 N.Y.S.2d 360 (N.Y.Sup.Ct. 1972). *But cf. Burrus v. Furnbo,* 743 F.2d 693 (9th Cir.1984) (suggesting a contrary conclusion).[8]

Since dismissal or invalidation of the Texas charge could not properly be considered in an extradition hearing, the district court was correct in refusing to address the issue of an IAD violation. The court found that the requirements of the Uniform Criminal Extradition Act had been satisfied. This determination is supported by the record, and has not been contested by the appellant. We therefore affirm the ruling of the district court.

---

**8.** We have no occasion here to consider the relevance of IAD violations when raised in pro-

ceedings concerning the effect of a detainer on the conditions of a prisoner's confinement.