Layne SWEANEY, Petitioner,

v.

DISTRICT COURT In and For the EIGHTEENTH JUDICIAL DISTRICT and John P. Gately, one of the Judges Thereof, Respondents.

No. 85SA126.

Supreme Court of Colorado, En Banc.

Jan. 31, 1986.

Rehearing Denied Feb. 24, 1986.

David F. Vela, Colorado State Public Defender, Douglas L. Bry, Deputy State Public Defender, Littleton, for petitioner.

Robert R. Gallagher, Jr., Dist. Atty., James J. Peters, Chief Deputy Dist. Atty., Littleton, for respondents.

LOHR, Justice.

In this original proceeding under C.A.R. 21, we issued a rule to show cause directing the respondent district court to demonstrate why it did not err in rejecting petitioner Layne Sweaney's motion to dismiss criminal charges against him because of a failure of compliance with the requirements of article III(c) of the Interstate Agreement on Detainers (IAD), § 24–60–501, art. III(c), 10 C.R.S. (1982). We make the rule absolute and remand for further proceedings.

## I.

Sweaney asserts a violation of his right under article III(c) of the IAD to be informed promptly of a detainer lodged against him in California by Arapahoe County authorities while Sweaney was serving a sentence in California. As a result of this violation, he contends, the criminal charges underlying the Arapahoe County detainer must be dismissed. The following facts appear from the record and provide the basis for determining the merits of Sweaney's arguments.

On October 10, 1979, Sweaney was convicted in Orange County, California, Superior Court of two counts of child molestation and one count of forcible oral copulation. Sweaney failed to appear for sentencing, and the California court issued a warrant for his arrest.

On June 15, 1980, police in Aurora, Colorado, arrested Sweaney, at the time going by the name of David Riley Watkins, for sexual assault on a child. The People filed a "Felony Complaint/Information" on June 20, 1980, in Arapahoe County District Court, charging Sweaney with two counts of sexual assault on a child and one count of first degree kidnapping. Sweaney was released on bond. He failed to make a required court appearance and violated certain other conditions of the bond, and on July 17, 1980, the district court revoked his bond and issued a warrant for his arrest.

Soon thereafter, Sweaney was arrested in Michigan pursuant to the California warrant and was returned to California for sentencing. Officials from the F.B.I. and then from the Orange County, California, Sheriff's Department notified the Arapahoe County Sheriff's Department that Sweaney was in custody. On October 1, 1980, the Arapahoe County Sheriff's Department mailed certified copies of the Colorado complaint and the warrant for Sweaney's arrest to the Orange County Sheriff's Department and requested that a detainer be placed against Sweaney. On December 19, 1980, the California court sentenced Sweaney to imprisonment for seven years and eight months in the California penal system. Shortly thereafter, the Orange County Sheriff's Department returned the detainer documents to the Arapahoe County Sheriff's Department, informing the Colorado authorities that they would have to contact the California Institution for Men at Chino, California, directly if the Colorado authorities desired to have that institution file a detainer against Sweaney.

On January 13, 1981, and again on April 3, 1982, the Arapahoe County Sheriff's Department mailed copies of the Colorado complaint against Sweaney and the warrant for his arrest to the California institution and requested that a detainer be placed against Sweaney. Only after a third request was made on June 14, 1982, did the California authorities file a detainer against Sweaney and acknowledge by letter to Arapahoe County, dated June 28, 1982, that the detainer had been placed.

We have described a detainer as " 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *People v. Moody,* 676 P.2d 691, 693 n. 2 (Colo.1984), *quoting United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978). In *People v. Yellen,* 704 P.2d 306, 311 (Colo.1985), after quoting the foregoing description, we noted that the Council of State Governments defined a detainer as " 'a warrant filed against a person already in custody with the purpose of insuring that he will be available to the authority which has placed the detainer.'

Suggested State Legislation for 1959, p. 167." *See People v. Bolin,* 712 P.2d 1002, 1002 n.2 (Colo.1986).

Article III(c) of the IAD provides:

The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

Under article III(a) of the IAD, a prisoner may request final disposition of any untried charge pending against him on the basis of which a detainer has been lodged. Within 180 days after the court and the prosecuting official receive such a request, the prisoner must be brought to trial or the charges against him shall be dismissed with prejudice. § 24–60–501, arts. III(a), V(c), 10 C.R.S. (1982). Article III(a) further provides that the 180 day period can be extended "for good cause shown in open court, the prisoner or his counsel being present." Finally, article III(e) provides that any request by a prisoner pursuant to article III(a) for final disposition of charges underlying the detainer shall be deemed a waiver of extradition to the state filing the detainer. § 24–60–501, art. III(e), 10 C.R.S. (1982).

Sweaney testified that he was told informally of the existence of the Colorado warrant in 1982, but that he was not officially informed of the lodging of the Colorado detainer and of his rights under the IAD until October 5, 1984. Documentary evidence supported Sweaney's testimony, and the district court found that "[t]he People have not established that the California penal authorities gave notice to the Defendant of Untried Indictment, Information or Complaint and of Right to Request Disposition prior to October 5, 1984." This was more than two years after Colorado filed the detainer request and California notified Colorado that the request had been received and a detainer lodged against Sweaney.

Upon being advised of the existence of the detainer and of his rights under the IAD, Sweaney promptly filed a request for final disposition of the Colorado charges underlying the detainer. Sweaney was returned to Colorado and appeared in Arapahoe County District Court on January 10, 1985. Shortly thereafter, Sweaney filed a number of motions to dismiss the charges against him, including a motion to dismiss for violation of the IAD. Specifically, Sweaney argued that California failed to comply with the prompt notification requirement in Article III(c) of the IAD and that because of this failure, Sweaney was deprived of his rights under the IAD and of his constitutional rights to due process of law and equal protection of the laws. As a result, Sweaney argued, the district court was required to dismiss all of the charges against him.

A hearing was held on the motion in March of 1985. On April 5, 1985, the district court issued an oral ruling denying Sweaney's motion to dismiss for violation of the IAD. The district court first stated that a defendant's rights under the IAD are statutory rights and do not rise to constitutional proportions. The district court then ruled that the manner in which an accused is brought before a court in Colorado for criminal proceedings has no bearing on the court's jurisdiction in those proceedings, relying for this proposition on our decision in *Yellen v. Nelson,* 680 P.2d 234 (Colo.1984). For that reason, the court concluded that a Colorado court could not consider Sweaney's claim that his rights under the IAD had been violated by acts or omissions of officials in California; only a California court could entertain such a claim.

Sweaney then filed a petition in this court under C.A.R. 21 seeking an order directing the district court to grant the motion to dismiss for violation of the IAD. We issued an order and rule to show cause and stayed further proceedings in the district court.

## II.

■ By failing for more than two years to inform Sweaney of the existence of the Colorado detainer and of Sweaney's rights under the IAD, it is beyond dispute that the California authorities violated the prompt notification requirement in article III(c) of the IAD. The question then becomes whether a sanction must be applied by the Colorado court for this violation and, if so, what that sanction should be.

The IAD neither prescribes an express sanction for failure to inform a prisoner promptly as required by article III(c) nor specifies whether the receiving state (here, Colorado), the sending state (California), or both, may determine that the requirement has not been met and impose sanctions for the violation. The IAD does provide, however, that if certain other requirements of that act are violated, "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." § 24–60–501, art. V(c), 10 C.R.S. (1982).

Recently, in *Dodson v. Cooper*, 705 P.2d 500 (Colo.1985), we followed the lead of a majority of the states that have addressed the issue and held that the power to dismiss charges for a violation of the prompt notification requirement of article III(c) of the IAD belongs to the receiving state alone. In support of our holding, we observed that neither the IAD nor any other source authorizes a sending state to dismiss or invalidate a charge underlying a detainer. *Id.* at 504–05. In *Dodson v. Cooper*, the state of Texas filed a detainer against Dodson while he was incarcerated in Colorado. Texas then sought the extradition of Dodson, and the Governor of Colorado issued a warrant for Dodson's extradition. Dodson filed a petition for a writ of habeas corpus, contending that Colorado authorities failed to inform him promptly concerning the detainer as required by Article III(c) of the IAD and that, as a result, the detainer should be dismissed and extra-

dition denied. The district court denied relief, and Dodson appealed. *Id.* at 501–02.

■ We affirmed. We analyzed both the IAD and the Uniform Criminal Extradition Act, sections 16–19–101 to –133, 8 C.R.S. (1978 & 1985 Supp.), and held that only Texas could inquire into the issue of compliance with the prompt notification requirement of the IAD in this situation, and that the ongoing validity of the Texas charges in the event of an IAD violation was for the Texas court alone to determine. Thus, we concluded that an IAD violation could not be asserted as a defense to extradition. 705 P.2d at 502–05. In the case now before us, the district court's ruling that Sweaney could assert a violation of the prompt notification requirement of the IAD only in the sending state, California, is directly contrary to our analysis of the workings of the IAD in *Dodson* and must be reversed.

We also find the district court's reliance on our decision in *Yellen v. Nelson* to be misplaced. In that case, Yellen fled the state while free on bond pending appeal following his conviction in Arapahoe County District Court for aggravated robbery. Yellen was arrested in Mississippi and extradited to Colorado at this state's request pursuant to the Uniform Criminal Extradition Act. Yellen filed a petition for a writ of habeas corpus in this state, arguing that Mississippi officials violated several of his constitutional rights by the manner in which they arrested and extradited him. Yellen argued that the denial of his constitutional rights by the Mississippi authorities precluded the Colorado courts from exercising jurisdiction over him on the matter underlying the warrant upon which he had been arrested and extradited. The district court denied the relief, and Yellen appealed. 680 P.2d at 234–35.

We affirmed the district court, relying on the well-settled law in this state and in the United States Supreme Court that "the manner by which an accused is brought before a court has no bearing on the court's subject matter jurisdiction in a criminal proceeding." *Id.* at 235. *Accord Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct.

509, 96 L.Ed. 541 (1952); *Bell v. Bower*, 199 Colo. 195, 606 P.2d 74 (1980); *Brown v. District Court*, 194 Colo. 225, 571 P.2d 1091 (1977). We concluded that Yellen could not seek relief in the courts of Colorado in a habeas corpus proceeding for the alleged violation of his constitutional rights by Mississippi authorities. *Yellen v. Nelson*, 680 P.2d at 235.

■ The decision in *Yellen v. Nelson* and the cases upon which it is based simply establish that a court's jurisdiction to try a defendant on criminal charges is not impaired by defects in the manner in which the defendant's presence in court is obtained. Even defects of constitutional magnitude in securing a defendant's presence do not affect the court's jurisdiction. *Frisbie v. Collins; Yellen v. Nelson*. The issue before us, however, is not whether the district court had jurisdiction to try Sweaney but instead whether the violation of the prompt notification requirement of the IAD mandates dismissal of the charge. Therefore, *Yellen v. Nelson* is inapposite, and pursuant to *Dodson v. Cooper*, the Arapahoe County District Court is *precisely* the court in which Sweaney must assert his rights under the IAD with respect to the charges pending in that jurisdiction.

### III.

■ We recently held that a defendant is entitled to the dismissal of charges against him underlying a detainer as a sanction for a violation of the prompt notification requirement of section 16–14–102(2) of the Uniform Mandatory Disposition of Detainers Act, unless the prosecution can demonstrate a lack of prejudice to the defendant resulting from that violation. *People v. Higinbotham*, 712 P.2d 993 (Colo. 1986). Under the facts of that case, as here, the act did not specify a sanction for the violation, and that fact was crucial to our determination in *People v. Higinbotham* that dismissal was not automatically

warranted for a violation of the prompt notification requirement. The Uniform Mandatory Disposition of Detainers Act and the IAD embody like policies and, generally, the principles of one may be applied to the other. *Id.*, at 997 n.2; *People v. Yellen*, 704 P.2d 306, 311 (Colo.1985); *People v. Lewis*, 680 P.2d 226, 229 n.8 (Colo. 1984). The trial court and the parties here did not have the guidance of our opinion in *People v. Higinbotham* at the time of the hearing on Sweaney's motion to dismiss for violation of the prompt notification requirement of the IAD. Therefore, we believe that the case should be remanded to that court for further proceedings in light of *Higinbotham* to determine whether the prosecution can demonstrate a lack of prejudice to the defendant resulting from the violation of the prompt notification requirement of the IAD.[1]

We make the rule absolute. In conducting further proceedings, the district court in its discretion may afford the parties an opportunity to present additional evidence.

---

1. We recognize that the IAD "is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Cuyler v. Adams,* 449 U.S. 433, 442, 101 S.Ct. 703, 709, 66 L.Ed.2d 641 (1981). *Accord People v. Higinbotham,* 712 P.2d 993, 999

(Colo.1986); *People v. Moody,* 676 P.2d 691, 695 (Colo.1984). We see nothing in the decisions of the United States Supreme Court or other federal courts that is inconsistent with our holding here today.