(855 P.2d 994)

No. 69,193

LISA DUNN, *Appellant*, v. EARL HINDMAN, DIRECTOR OF SHAW-NEE COUNTY DEPARTMENT OF CORRECTIONS, *et al., Appellees.*

Opinion filed July 9, 1993.

*Benjamin C. Wood*, of Lawrence, for appellant.

*Carla J. Stovall*, special prosecutor and assistant attorney general, for appellees.

Before ROYSE, P.J., BRAZIL, J., and THEODORE B. ICE, District Judge, assigned.

ROYSE, J.: Lisa Dunn filed a petition for writ of habeas corpus, requesting that the warrant for her extradition to Arkansas be set aside. The district court denied her petition, and Dunn appeals. The issues raised by Dunn are:

1. Whether she is a fugitive from justice whose extradition to Arkansas is mandatory.
2. Whether Arkansas authorities, by submitting false and misleading statements in their extradition documents, perpetrated a fraud on the State of Kansas and deprived Dunn of her due process rights.
3. Whether the demand for extradition from Arkansas fails to comply with the requirements of K.S.A. 22-2703 and the Fourth Amendment to the United States Constitution.
4. Whether the double jeopardy clauses of the United States, Kansas, and Arkansas Constitutions preclude extradition.
5. Whether Dunn has been denied her right to speedy trial.

This proceeding is controlled by Article IV, § 2, clause 2 of the United States Constitution, which provides:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. *Biddinger v. Commissioner of Police*, 245 U.S. 128, 132-33, 62 L. Ed. 193, 38 S. Ct. 41 (1917). "The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states." *Michigan v. Doran*, 439 U.S. 282, 287, 58 L. Ed. 2d 521, 99 S. Ct. 530 (1978). See *Puerto Rico v. Branstad*, 483 U.S. 219, 226-27, 97 L. Ed. 2d 187, 107 S. Ct. 802 (1987).

K.S.A. 22-2701 *et seq.*, the Kansas Uniform Criminal Extradition Act, implements the requirements of the Extradition Clause. The federal counterpart is 18 U.S.C. § 3182 (1988). In *Michigan v. Doran*, 439 U.S. at 288-89, the United States Su-

preme Court held: "[T]he courts of an asylum state are bound by Art. IV, § 2, . . . by [18 U.S.C.] § 3182, and, where adopted, by the Uniform Criminal Extradition Act."

Dunn argues she is not a fugitive from justice and, thus, she was not subject to mandatory extradition under K.S.A. 22-2702. That statute provides:

"Subject to the provisions of this article, the provisions of the constitution of the United States controlling, and any and all acts of congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."

"A person who commits a crime in another state and flees to Kansas is subject to mandatory extradition under K.S.A. 22-2702." *Kennon v. State*, 248 Kan. 515, Syl. ¶ 2, 809 P.2d 546 (1991).

Dunn does not deny that she was in Arkansas when the murder with which she is charged took place. She contends, however, that she cannot be considered a fugitive because Daniel Remeta forced her to leave Arkansas with him against her will. In support of this contention, Dunn relies upon K.S.A. 22-2705, which provides in pertinent part:

"The governor of this state *may also surrender* on demand of the executive authority of any other state any person in this state who is charged . . . with having violated the laws of the state whose executive authority is making the demand, even though such person left the demanding state involuntarily."

Dunn asserts that K.S.A. 22-2705, providing for extradition at the governor's discretion, must be strictly construed in her favor and that she must be afforded the opportunity to benefit from the Governor's exercise of discretion. She cites no authority for this construction of the statute. To the contrary, in *Biddinger v. Commissioner of Police*, 245 U.S. at 133, the United States Supreme Court noted that the constitutional and statutory provisions for extradition are not to be strictly construed:

"Such being the origin and purpose of these provisions of the Constitution and statutes, they have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose, with the result that one who leaves the demanding State before prosecution is anticipated or begun, or without knowledge on his part that he has violated any law, or who, having committed a crime in one State,

returns to his home in another, is nevertheless decided to be a fugitive from justice within their meaning. [Citations omitted.]"

Dunn contends that the plain meaning of K.S.A. 22-2705 encompasses her departure from Arkansas under compulsion. She acknowledges that the Commissioner's Note to Section 5 of the Uniform Criminal Extradition Act, 11 U.L.A. 159, 160 (1936), which is identical to K.S.A. 22-2705, indicates the provision was directed at government compulsion:

"The reason for the second paragraph of this section lies in the fact that there is a conflict in the decisions upon the question whether a person who has been removed from a state under the compulsion of the authority of that state can be classed as a 'fugitive' from that state so that his return can be secured through extradition proceedings. [Citations omitted.]"

Dunn's argument that this Note must be ignored because it was not adopted in Kansas is not persuasive. K.S.A. 22-2729 directs that the provisions of the Kansas Uniform Criminal Extradition Act "shall be so interpreted and construed as to effectuate its general purposes to make uniform the law of those states which enact it." Recognition of the Commissioners' Note is consistent with the goal of uniform construction established in 22-2729.

When the legislature adopts a statute from a uniform law, it carries with it the construction placed upon that statute by the drafters except where such construction is contrary to the constitution or public policy of the adopting state. In determining the legislative intent, courts are not limited to mere consideration of the language employed but may also examine the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under various constructions suggested. *In re Estate of Reed*, 233 Kan. 531, 664 P.2d 824, *cert. denied* 464 U.S. 978 (1983). The Commissioner's Note accompanying Section 5 of the 1936 Uniform Act clearly indicates that the section was not intended to apply to a factual situation such as the one before this court. K.S.A. 22-2705 provides the Governor of Kansas with discretion to grant an extradition demand only in those instances where the individual whose extradition is sought left the demanding state under the compulsion of the authority of that state. Therefore, Dunn's argument that K.S.A. 22-2705 provides her with nonfugitive status is without merit.

The phrase "fugitive from justice" has consistently been interpreted to refer to a person who commits a crime in one state and is afterwards found in another state. *Appleyard v. Massachusetts*, 203 U.S. 222, 229, 51 L. Ed. 161, 27 S. Ct. 122 (1906); *Roberts v. Reilly*, 116 U.S. 80, 97, 29 L. Ed. 544, 6 S. Ct. 291 (1889); *Thompson v. Nye*, 174 Kan. 750, 751-52, 257 P.2d 937 (1953). The person's motive for leaving the demanding state is immaterial. *Woody v. State*, 215 Kan. 353, 363, 524 P.2d 1150, cert. denied 419 U.S. 1003 (1974); *In re Martin*, 142 Kan. 907, 912, 52 P.2d 1196 (1935). Thus, a murder suspect who fled Oklahoma out of fear of mob violence was held to be a fugitive, *Glass v. Becker*, 25 F.2d 929 (9th Cir. 1928); as was a Tennessee defendant who claimed he left the state involuntarily after hearing of a lynch mob, *People ex rel. Heard v. Babb*, 412 Ill. 507, 107 N.E.2d 740, 741-42 (1952); a defendant who had been beaten and mistreated in jail and whose attorney had withdrawn in response to death threats, *People ex rel. Neufeld v. Commissioner of N.Y. City Dept. of Correction*, 71 N.Y.2d 881, 522 N.E.2d 1060, (1988); and a defendant who fled to escape inhumane prison conditions, *Sweeney v. Woodall*, 344 U.S. 86, 97 L. Ed. 2d 114, 73 S. Ct. 139 (1952). These cases all support the conclusion that Dunn is a fugitive from justice, notwithstanding her claim that Daniel Remeta forced her to leave Arkansas against her will.

Dunn's reliance on *Kennon v. State*, 248 Kan. 515, is misplaced. *Kennon* concerns the application of 22-2706, the extradition provision for persons not present in the demanding state at the time the crime was committed. Dunn makes no claim that she was not present in Arkansas when the murder was committed.

Similarly, Dunn's complaint that the Governor did not exercise her discretion under 22-2704 is unavailing. That statute provides that the Governor may direct the attorney general to investigate the demand or the circumstances of the person demanded. It gives the Governor discretion to investigate extradition demands; it does not impart discretion to deny a demand where, as here, the individual sought by the demanding state is a fugitive.

Dunn's second argument on appeal is that the Arkansas extradition documents, submitted to Governor Finney, contained false and misleading statements. Dunn argues that, given these mis-

statements of fact, the demand for her extradition to Arkansas is fraudulent and should not be honored.

In her brief, Dunn alleges two examples of the fraudulent conduct of Arkansas officials. The first is attributed to Arkansas prosecutor Ron Fields. In 'a' letter written to fellow Arkansas law enforcement authorities on April 3, 1985, Fields stated that he was "[un]aware of any evidence . . . that Dunn was involved in the actual murder in our case." An undated newspaper article in the record quotes 'Fields as follows: " 'We tried Danny Remeta on the same set of facts that we'll use against Lisa Dunn. He was convicted and given the death penalty. I expect the same thing in her case.' " Dunn argues that these statements are contradictory and provide evidence that Fields is seeking her extradition for a crime that he cannot prove she committed.

Dunn asserts that a second example of fraud is found in the affidavit of Don Taylor, the Fort Smith, Arkansas, chief of police. In his affidavit, Taylor claims that two witnesses can identify Dunn as an active participant in the crime for which her extradition is sought. The witnesses are not identified by name. Dunn contends that no such witnesses exist.

Although Dunn couches her contentions in the context of fraud, in actuality she is requesting that Kansas authorities evaluate the strength of the evidence connecting her to criminal activity in Arkansas. Neither the Governor nor the courts of Kansas possess such authority. K.S.A. 22-2720 provides that, after receiving a valid demand for extradition, the Governor may not inquire into the guilt or innocence of the accused except as necessary to identify the person held as the individual charged with the crime in the demanding state.

The inquiry which may be made by the courts of the asylum state is likewise limited. When an accused challenges extradition in a habeas corpus proceeding, courts may determine no more than (1) whether the extradition documents on their face are in order; (2) whether the petitioner has been charged with a crime in the demanding state; (3) whether the petitioner is the person named in the request for extradition; and (4) whether the petitioner is a fugitive. *Kennon*, 248 Kan. at 521 (following *Michigan v. Doran*, 439 U.S. at 289). Whether sufficient evidence exists which would support Dunn's conviction of capital murder is a

question which must be settled in Arkansas. This court is without authority to determine the issue.

Dunn's third contention on appeal is that the extradition demand submitted to Governor Finney does not comply with either K.S.A. 22-2703 or the Fourth Amendment to the United States Constitution. K.S.A. 22-2703 provides in pertinent part:

"No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing . . . and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon . . . . The indictment, information affidavit or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and . . . must be authenticated by the executive authority making the demand."

The corresponding provision of the federal act, 18 U.S.C. § 3182 (1988), requires only that the executive authority making the extradition demand produce "a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic . . . ."

The documents sent with the written demand for Dunn's extradition in this case included: (1) a document titled "Information" which charges Lisa Dunn with capital murder and is dated February 25, 1985; (2) an arrest warrant issued by a district court clerk on February 25, 1985; (3) a supporting affidavit, signed by the prosecutor and dated September 15, 1992; (4) affidavits in support of extradition submitted by the Fort Smith, Arkansas, police chief and the assistant prosecuting attorney, both dated September 15, 1992; and (5) the sworn affidavit of an Arkansas judge, dated September 15, 1992, which includes his finding that sufficient probable cause exists to support the charge against Dunn.

Dunn alleges that the extradition documents are defective because the procedure employed to obtain the warrant for her arrest violated the Fourth Amendment. In support of her allegation, Dunn focuses upon the fact that (1) a court clerk rather than a magistrate issued the warrant, and (2) a determination of probable cause was not made prior to the issuance of the warrant.

The first problem with Dunn's allegation is that neither the Extradition Clause of the federal constitution nor the federal statute require presentation of a warrant. Extradition is intended to provide a summary and mandatory executive proceeding to facilitate the prompt return of fugitives upon demand. Since federal legislation in the field is not comprehensive, states may establish ancillary proceedings consistent with the federal scheme. However, a state may not impose more stringent standards or refuse a demand for extradition on the basis of requirements not articulated by federal law. *Breckenridge v. Hindman,* 10 Kan. App. 2d 50, 53, 691 P.2d 405 (1984), *rev. denied* 236 Kan. 875 (1985).

Furthermore, the Kansas Supreme Court has already considered a similar set of requisition documents in *In re Habeas Corpus Application of Danko,* 240 Kan. 431, 731 P.2d 240 (1987). Faced with a situation in which an Arkansas judge made a finding of probable cause after the arrest warrant was issued, but before the issuance of the requisition or the governor's warrant, the court concluded:

"Additionally, we have the finding of probable cause, made by an Arkansas judge prior to the governor's requisition and the issuance of the governor's warrant. A judicial determination that probable cause exists has been made in Arkansas. No further inquiry may be had on that issue in this state." 240 Kan. at 434-35.

The trial court did not err in concluding that the extradition documents satisfy the statutory requirements and demonstrate that a neutral judicial officer of Arkansas has determined that probable cause exists. Dunn's objection to the extradition documents is without merit.

Dunn's final argument is that extraditing her to Arkansas violates her constitutional rights to due process, a speedy trial, and freedom from double jeopardy. In connection with her speedy trial contention, Dunn maintains that Kansas authorities violated her rights under the Agreement on Detainers Act, K.S.A. 22-4401 *et seq.,* by failing to advise her that she could request a final disposition of the Arkansas charges.

These issues must be resolved in the courts of Arkansas, not Kansas.

"Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition

documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. . . .

. . . .

". . . To allow plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the summary and mandatory procedures authorized by Art. IV, § 2. [Citations omitted.]" *Michigan v. Doran*, 439 U.S. at 289-90.

An extradition proceeding in the asylum state is not the proper forum for considering defenses or resolving the issue of guilt or innocence. Those matters must be raised at trial in the demanding state. *California v. Superior Court of California*, 482 U.S. 400, 407-08, 96 L. Ed. 2d 332, 107 S. Ct. 2433 (1987); *Biddinger*, 245 U.S. at 135; *Pettibone v. Nichols*, 203 U.S. 192, 206, 51 L. Ed. 148, 27 S. Ct. 111 (1906); *Perry v. Gwartney*, 162 Kan. 607, Syl. ¶ 2, 178 P.2d 185 (1947).

Any alleged violation of the interstate Agreement on Detainers is also beyond the scope of an extradition proceeding. *In re Fabricant*, 118 Cal. App. 3d 115, 119-20, 173 Cal. Rptr. 245 (1981); *Dodson v. Cooper*, 705 P.2d 500, 503-04 (Colo. 1985), *cert. denied* 474 U.S. 1084 (1986); *Giardino v. Bourbeau*, 193 Conn. 116, 127-28, 475 A.2d 298 (1984).

We have carefully considered Dunn's arguments and find them to be without merit. The district court did not err in denying her petition for writ of habeas corpus.

We would note that appellant's brief fails to comply with Rule 6.02(a) (1992 Kan. Ct. R. Annot. 25).

Affirmed.