No. 64,373

JOHN R. KENNON, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(809 P.2d 546)

Opinion filed April 12, 1991.

*Charles D. Dedmon,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Debra Byrd Wagner,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Nola Foulston,* district attorney, were with her on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: The petitioner, John R. Kennon, appeals from an order of the Sedgwick County District Court denying Kennon's petition for a writ of habeas corpus and thereby permitting Kennon's extradition to Alabama. The Court of Appeals affirmed the district court, and we granted Kennon's petition for review. We reverse.

The issues asserted by Kennon are:

I:    Whether the district court erred in failing to grant Kennon's petition when no facts proved Kennon was a fugitive from justice as required by K.S.A. 22-2702, the statute under which the State of Kansas was proceeding.

II.   Whether the district court erred in failing to grant Kennon's petition when the extradition documents were framed under K.S.A. 22-2702, depriving Kennon of the gubernatorial discretion which is his due process right under K.S.A. 22-2706.

III.  Whether K.S.A. 22-2706 is unconstitutional under the Compact Clause of Article I, Section 10 of the United States Constitution because the powers exercised under that statute extend beyond the jurisdiction of the State of Kansas without Congressional consent.

IV.  Whether Kennon's petition should have been granted because the extradition documents do not show a finding of probable cause by an Alabama judge.

On July 14, 1989, the petitioner John R. Kennon was arrested in Kansas as a "fugitive from justice from Elmore County, Alabama," where he had been charged with two counts of capital murder and one count each of attempted murder and felony assault. On July 28, 1989, Kennon filed a petition for writ of habeas corpus, claiming his restraint was unlawful because Alabama lacked jurisdiction, he had never been in Alabama, and he never acted to cause a crime in Alabama. A writ was issued the same day and a hearing scheduled which was continued by agreement of the parties, pending receipt of a warrant from the Governor of Kansas.

On August 31, 1989, Governor Mike Hayden issued a governor's warrant for Kennon's arrest and rendition to the Alabama authorities. The warrant stated that demand had been made from the Governor of Alabama, certified copies of a "Complaint, Indictment, Warrant and Supporting documents" had been provided by the Governor of Alabama charging Kennon with "Capital Murder, two counts, attempted murder, assault," and "[i]t has been made to appear to me that the said John Kennon is within the State of Kansas, fugitive from the justice of the State of Alabama."

The documents provided to the Governor of Kansas included an indictment by an Elmore County, Alabama, grand jury, a true bill, an Alabama arrest warrant, an application for extradition by an Alabama district attorney, and the demand or requisition from the Governor of Alabama.

The indictment returned by the Elmore County, Alabama, grand jury alleged that

"John Kennon . . . did for a pecuniary or other valuable consideration or pursuant to a contract for hire intentionally cause the death of another person, to-wit: Clemer E. Woodall, by shooting her with a pistol . . . [Count I]. . . . John Kennon . . . did with the intent to cause the death of another person, intentionally cause the death of Clemer E. Woodall by shooting her with a pistol . . . during the time that the said John Kennon and another participant in the crime was in the course of committing a theft . . . [Count II]. . . . John Kennon did . . . attempt to intentionally cause the death of Elmer H. Woodall, by shooting at or in the direction of Elmer H. Woodall with a pistol . . . [Count III]. . . . John Kennon did . . . cause serious physical injury to Elmer H. Woodall, by means of a deadly weapon or a dangerous instrument, to-wit: a pistol . . . [Count IV]."

The application for extradition, submitted to the Governor of Alabama by Janice Clardy, an Alabama district attorney, on July 20, 1989, stated in pertinent part: .

"That one JOHN KENNON (hereinafter referred to as the accused) is charged in ELMORE County Alabama with the offenses of Capital Murder (2 counts), Attempted Murder, and Assault I, as shown by the certified copies of INDICTMENT and writ of arrest accompanying this petition. This offense is alleged to have been committed on or about June 26, 1989, in or near the city of TALLASSEE in the county of ELMORE, in the State of ALABAMA . . . ."

The application then sets forth the four counts charged in language nearly identical to that contained in the indictment and continues:

"That said accused is now a fugitive from justice in this State and is believed to have taken refuge in the State of KANSAS and is at the present time in or near WICHITA in that State.

"That it is necessary for the ends of justice that said fugitive should be returned to the State of Alabama . . . ."

In response to the above documents, the Governor of Alabama on July 31, 1989, made demand on the Governor of Kansas for Kennon's extradition to Alabama. The requisition provides:

"WHEREAS, It appears by the annexed copy of an INDICTMENT AND WRIT OF ARREST which is hereby duly certified to be authentic in accordance with the Laws of this State, that JOHN KENNON stands charged with the crimes of CAPITAL MURDER (2 CTS.), ATTEMPTED MURDER, ASSAULT I committed in the County of ELMORE in this State, and it has been represented to me that JOHN KENNON has taken refuge in the State of KANSAS.

NOW THEREFORE, pursuant to the provisions of the Constitution and Laws of the United States in such case made and provided, I request that you cause the said JOHN KENNON to be apprehended and delivered to SHERIFF SIDNEY THRASH AND/OR HIS DULY AUTHORIZED AGENT(S) who are hereby authorized to receive and convey him to the State of Alabama, there to be dealt with according to law."

In reliance upon these documents Governor Hayden issued a warrant for Kennon's arrest and rendition to Alabama.

At his habeas corpus hearing, held on September 15, 1989, Kennon continued to object to his extradition, claiming among other things that Governor Hayden's warrant and the indictment are invalid because they refer to Kennon committing acts in Alabama but that Kennon was never in Alabama, could not be a principal to the crime, and could not be a fugitive from Alabama. The evidence produced at the hearing conclusively proved that Kennon was not in Alabama at the time of the alleged crimes. Two witnesses for Kennon testified Kennon was present in Kansas on June 26, 1989.

In addition to the two witnesses presented by Kennon, an agent with the Alabama Bureau of Investigation and an agent with the Kansas Bureau of Investigation testified to the facts which provided the basis for the indictment against Kennon. Their inves-

tigation showed that the death of Clemer Woodall and the wounding of Elmer H. Woodall were physically committed by Freddie Glenn Pope. The agents testified that Pope identified J.C. Woodall as the person who paid him and John Kennon as the person who introduced Pope to Woodall in exchange for payment. Furthermore, according to the agents, Pope also stated that Kennon asked Pope if he could be hired to kill someone in Alabama. The agents subsequently interviewed Kennon at Wesley Hospital, where Kennon allegedly told them that J.C. Woodall asked him to kill or shoot someone in Alabama and he declined; Woodall then asked Kennon to help him find someone who would perform the killing, and Kennon told him of Pope. All of the incidents involving Kennon took place in Kansas and the Sedgwick County assistant district attorney representing the State candidly advised the court, "I don't think anyone seriously argues that any conduct that Kennon committed was committed in the State of Alabama. It was committed in the State of Kansas."

In response to Kennon's argument that the warrant and indictment were invalid because he was not a principal and thus not a fugitive as stated in the warrant, the State contended and the trial court held that Kennon was a fugitive under K.S.A. 22-2706, which allows extradition when a person has committed an act outside the demanding state intentionally resulting in a crime in the demanding state. Relying on *Greenbaum v. Darr*, 220 Kan. 525, 552 P.2d 993 (1976), and an Alabama statute providing jurisdiction for crimes beginning outside Alabama and ending in Alabama, the trial court further held that the failure of the extradition documents, and in particular the indictment, to allege that Kennon's acts were committed in Kansas, not in Alabama, was not fatal to extradition. Accordingly, the court dissolved the writ of habeas corpus previously issued but extradition was stayed pending appeal.

The Court of Appeals affirmed in an unpublished opinion, *Kennon v. State*, No. 64,373, filed September 28, 1990, with Judge Elliott dissenting. We accepted Kennon's petition for review.

The first two issues asserted by petitioner overlap, are inextricably intertwined, and will be considered together.

This proceeding is controlled by the Kansas Uniform Criminal Extradition Act, K.S.A. 22-2701 *et seq.*, which provides in pertinent part:

"**22-2702. Fugitives from justice; duty of governor.** Subject to the provisions of this article, the provisions of the constitution of the United States controlling, and any and all acts of congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."

"**22-2703. Form of demand.** No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under K.S.A. 22-2706 and amendments thereto, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter the accused fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon . . . . The indictment, information affidavit or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand."

"**22-2706. Persons not present in the demanding state at time of commission of crime.** The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 22-2703 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."

K.S.A. 22-2702 and 22-2703 are the statutes which give operative effect to Article IV, § 2, cl. 2 of the United States Constitution, which provides:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

The federal counterpart to K.S.A. 22-2702 and 22-2703 is 18 U.S.C. § 3182 (1988).

The crucial distinction between K.S.A. 22-2702 and K.S.A. 22-2706 is that extradition of a person who has committed a crime in the demanding state (Alabama) and fled therefrom is mandatory and the governor in the receiving state (Kansas) must grant the extradition request, assuming all the required formalities of K.S.A. 22-2703 and other portions of the act are met, while extradition of a person who has committed an act in the receiving state or a third state intentionally resulting in a crime in the demanding state is discretionary with the governor of the receiving state, in this case Governor Hayden of Kansas.

The State does not seriously dispute that the extradition documents are based upon K.S.A. 22-2702, but attempts to avoid the clear language of K.S.A. 22-2706 by asserting that Kennon is a fugitive from justice and either statute mandates his extradition to Alabama.

In *Michigan v. Doran*, 439 U.S. 282, 288-89, 58 L. Ed. 2d 521, 99 S. Ct. 530 (1978), the United States Supreme Court held: "[T]he courts of an asylum State are bound by Art. IV, § 2, cf. *Compton v. Alabama*, 214 U.S. 1, 8 (1909), by [18 U.S.C.] § 3182 and, where adopted, by the Uniform Criminal Extradition Act."

There is an established body of case law under the federal Constitution and statute encompassing what this court in *State v. Smith*, 232 Kan. 128, 652 P.2d 703 (1982), expressed as follows:

"In speaking of the limitations on the scope of the inquiry in courts of the asylum state in extradition proceedings, the United States Supreme Court in *Michigan v. Doran*, 439 U.S. 282, 289, 58 L. Ed. 2d 521, 99 S. Ct. 530 (1978), said:

'A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. Cf. *Bassing v. Cady*, 208 U.S. 386, 392 (1908). Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; *and (d) whether the petitioner is a fugitive*. These are historic facts readily verifiable.' " 232 Kan. at 133. (Emphasis added.)

In the historic case of *Hyatt v. Corkran*, 188 U.S. 691, 47 L. Ed. 657, 23 S. Ct. 456 (1903), the petitioner, Corkran, sought a writ of habeas corpus when he was held by New York authorities for extradition to Tennessee. The extradition proceedings alleged

that Corkran was a fugitive from justice from the State of Tennessee for crimes he allegedly committed in Tennessee. At the hearing, it was conceded that Corkran had not been in the State of Tennessee at the time of the commission of the alleged crimes. The Court stated:

"[A]s the [petitioner] showed without contradiction and upon conceded facts that he was not within the State of Tennessee [demanding state] at the times stated in the indictments found in the Tennessee court, nor at any time when the acts were, if ever, committed, he was not a fugitive from justice within the meaning of the Federal statute upon that subject, and upon these facts the warrant of the governor of the State of New York [asylum state] was improperly issued . . . ." 188 U.S. at 719.

This court cited *Corkran* (along with numerous other cases) in *King v. Hawes*, 224 Kan. 335, 580 P.2d 1318 (1978), for the holding: "To *require and justify* the rendition of an accused by the asylum state to the demanding state it must be shown that he is . . . (3) a fugitive, which is to say that the accused was in the demanding state when the alleged crime was committed." 224 Kan. at 336. (Emphasis added.)

The State does not argue with the cases cited by Kennon but merely contends that he is a fugitive from justice because K.S.A. 22-2706 simply expands the definition of fugitive from justice found in Article IV, § 2, cl. 2; K.S.A. 22-2702; and the cases cited by petititioner. However, to adopt the arguments of the State would be tantamount to a finding that K.S.A. 22-2706 is meaningless. The clear language of the statute precludes any such determination. Under the Kansas Uniform Criminal Extradition Act, the term fugitive requires that the accused was in the demanding state when the alleged crime was committed. *King v. Hawes*, 224 Kan. 335, Syl. ¶ 1.

The State and the trial court relied upon *Greenbaum v. Darr*, 220 Kan. 525, wherein the State of Texas sought to extradite Greenbaum for various crimes which allegedly were committed in Texas but were in fact committed in Kansas. However, some of the documents submitted in support of the extradition proceedings clearly indicated that Greenbaum's actual participation in the alleged crimes took place in Kansas and not in Texas. The court, in denying Greenbaum's arguments, adopted the rule that

all of the documents should be read together in determining their
sufficiency under K.S.A. 22-2706. In doing so, the court stated:

"A careful reading of 22-2706 demonstrates that in order to extradite a person
not present in the demanding state at the time of the commission of the
crime, the person *must be charged 'in the manner provided in section 22-
2703 with committing an act in this state or in a third state, intentionally
resulting in a crime' in the demanding state.* By reference to 22-2703, it is
clear that the governor's demand must be accompanied by an indictment,
information affidavit, or affidavit made before a magistrate, substantially
charging the person with a crime under the laws of the demanding state.

. . . .

"While we acknowledge that a strict construction of the statutes involved
[22-2703 and 22-2706] could lead to the conclusion now urged upon us by
petitioner, we believe the better rule is to judge the substantiality of the
'charge' for purposes of extradition by consideration of the indictments *in
conjunction with the supporting requisition documents.*" 220 Kan. at 528.
(Emphasis added.)

Although the extradition was granted in *Greenbaum,* it was
done so based upon a consideration of all the extradition docu-
ments which, when read together, clearly met the requirements
of K.S.A. 22-2706. When considered together, the documents
were sufficient to inform the governor that extradition was sought
pursuant to that statute and that the governor had the discretion
to grant or deny the extradition.

Here, the documents seeking Kennon's extradition uniformly
alleged that he committed the crimes in Alabama, and there is
nothing in the documents, individually or when read together,
that would have given any indication to the Governor of Alabama
or the Governor of Kansas that Kennon's participation, if any, in
the alleged crimes took place in Kansas, not Alabama.

K.S.A. 22-2706 clearly applies to the facts of this case and the
governor had the discretion to deny the request for extradition.
Unfortunately, there is nothing in the various extradition papers
submitted to the governor and nothing in this record which would
indicate that Governor Hayden was ever made aware of the fact
that this was an extradition in which he had discretion under
K.S.A. 22-2706 and not a mandatory extradition under K.S.A.
22-2702.

The State has cited no authority to support its arguments that
the documents in this case are sufficient to support an extradition

under K.S.A. 22-2706. To the contrary, our research discloses that all of the cases on point support the conclusion that the documents in this case are insufficient to allow extradition under K.S.A. 22-2706. See *Dutil v. Rice,* 34 Conn. Supp. 78, 376 A.2d 1119 (1977); *People ex rel Bernheim v. Warden,* 95 Misc. 2d 577, 408 N.Y.S. 2d 285 (1978); *Earhart v. Hicks,* 656 S.W.2d 873 (Tenn. Crim. App. 1983). In *Warden* the court succinctly pointed out the serious consequences of allowing an extradition under facts similar to the ones now before this court. The New York court stated:

"In the case before us, *there has been a substantial violation of the relator's rights.* As a result of the error involved, the warrant to extradite the relator was issued as a matter of course by the Governor, as *mandated* by the United States Constitution and relevant Federal and State laws. The relator was fundamentally harmed since he was deprived of the Governor's exercise of discretion and the other conditions of surrender to the demanding state as provided for under CPL 570.16 [the New York counterpart to K.S.A. 22-2706]. *That the Governor may well have decided to extradite the defendant anyway, does not justify circumventing the Governor's discretionary judgment.*

"The courts have consistently invalidated warrants for extradition where errors have deprived persons from receiving the benefit of the Governor's exercise of discretion." 95 Misc. 2d at 579-80. (Emphasis added.)

Our statutes on extradition, K.S.A. 22-2701 *et seq.,* essentially conform to the Uniform Criminal Extradition Act adopted by the National Conference of Commissioners on Uniform State Laws and were enacted by the legislature in 1937. K.S.A. 22-2729 provides:

"**Uniformity of interpretation.** The provisions of this act [article] shall be so interpreted and construed as to effectuate its general purposes to make uniform the law of those states which enact it."

All of the relevant cases which we have found from other jurisdictions which have adopted the uniform act support the conclusion that the writ of habeas corpus should have been granted in this case.

The conceded facts clearly demonstrate that this extradition proceeded under K.S.A. 22-2702 and the governor was denied any opportunity to exercise his discretion under the proper statute, which was K.S.A. 22-2706. If the documents from Alabama had accurately set forth allegations that the acts of Kennon in

Kansas intentionally resulted in the crimes in Alabama, then that requirement of K.S.A. 22-2706 would have been met and the governor could have exercised the required discretion in considering whether to grant extradition. In view of our conclusions, there is no need to address the other issues asserted by Kennon.

The judgment of the Court of Appeals and the judgment of the district court are reversed. The case is remanded to the trial court with directions to grant the writ of habeas corpus.