**Lisa J. DUNN, Petitioner,**

v.

**Earl HINDMAN, et al., Respondents.**

**No. 93–3347–DES.**

United States District Court, D. Kansas.

Oct. 5, 1993.

As Corrected Nunc Pro Tunc Oct. 12, 1993.

Jessica R. Kunen, Office of the Appellate Defender, Topeka, KS, Benjamin C. Wood, Olathe, KS, Kevin McNally, Frankfort, KY, for petitioner.

Carla J. Stovall, Entz & Chanay, Topeka, KS, for respondents.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, who is currently being detained in the Shawnee County Jail, is seeking to block her extradition to the State of Arkansas to face charges of capital murder. Conviction of capital offenses in Arkansas carries the potential for the imposition of the death penalty.

In this action, petitioner challenges her extradition to Arkansas and claims: (1) petitioner's constitutional rights, under the Fourth and the Fourteenth Amendments, were violated because a proper probable cause determination was not made by a neutral and detached magistrate; (2) petitioner's constitutional right to due process under the Fourteenth Amendment was violated by the vindictive prosecution by the State of Arkansas authorities: (3) the extradition documents are contradictory which allows the Governor of Kansas to look behind the face of the document to investigate those contradictions; and (4) petitioner is not a fugitive from justice which allows the Governor of Kansas to exercise her discretion in signing or refusing to sign the extradition documents.

Having reviewed the record and having heard evidence and oral argument in this matter, the court makes the following findings and order.

### FACTUAL AND PROCEDURAL BACKGROUND

Although this case is here on a petition for writ of habeas corpus challenging extradition, it is not the first time the petitioner has been before this court. In 1991, this court granted petitioner a new trial, holding that the state trial court erred when it failed to make an expert available to help petitioner prepare her defense of battered women's syndrome. The United State Court of Appeals for the Tenth Circuit affirmed this court's order.[1]

Petitioner was retried in Shawnee County, Kansas, and acquitted of all charges for which she had previously been convicted. Subsequent to the acquittal, the State of Arkansas instituted extradition proceedings to return petitioner to stand trial on capital murder charges.[2]

Petitioner's state habeas corpus hearing concerning the propriety of the extradition process was decided against petitioner. The Kansas Court of Appeals affirmed the trial court and the Kansas Supreme Court denied petition for review.

On August 19, 1993, petitioner filed a request for stay pending this court's determination of the propriety of the extradition proceedings. This court granted the stay and petitioner filed her petition for writ of habeas corpus on August 20, 1993.

The State filed its Answer and Return on September 13, 1993. Petitioner filed a Traverse on September 29, 1993. On September 30, 1993, the court entertained motions and on October 4, 1993, limited evidence and oral argument were presented by the parties.

### DISCUSSION

■ Before a fugitive in custody may be extradited she may challenge the validity of the extradition in a federal habeas corpus action. *Michigan v. Doran*, 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978). Petitioners who challenge their extradition do so with the understanding that the Extradition Clause of the United States Constitution envisions summary and mandatory extradition. *U.S. Const., art. IV, § 2, cl. 2.*

■ The obvious purpose of the Clause "is that no State should become a safe haven for the fugitives from a sister State's criminal justice system." *California v. Superior Court of California*, 482 U.S. 400, 406, 107 S.Ct. 2433, 2437, 96 L.Ed.2d 332 (1987). If a person flees to another state to avoid justice, the asylum state must deliver the person to the demanding state upon demand after being presented with proper documents. *Gee*

---

**1.** See *Dunn v. Roberts*, 768 F.Supp. 1442 (D.Kan. 1991), *Dunn v. Roberts*, 963 F.2d 308 (10th Cir. 1992).

**2.** The court notes that the State of Arkansas first sought temporary custody of petitioner in 1986 and again in 1987.

*v. State of Kan.,* 912 F.2d 414, 416 (10th Cir.1990).

■ The inquiry made by a federal habeas court is, therefore, narrow and limited to whether: (1) the extradition documents are in order on their face; (2) the petitioner demanded is charged with a crime; (3) the petitioner is the person named in the request; and (4) the petitioner demanded is a fugitive from justice. *Id.*

"Extradition proceedings are 'to be kept within narrow bounds'; they are 'emphatically' not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party." *California, supra,* 482 U.S. at 407, 107 S.Ct. at 2438. The courts of the asylum state do no more than determine whether the requirements of the Extradition Act have been met. *Id.* at 408, 107 S.Ct. at 2439.[3]

Given this framework, the court will proceed to address the four issues raised by petitioner in this action.

*Issue 1*

Petitioner first claims that a proper probable cause determination was not made in the State of Arkansas. The gist of petitioner's argument is that no Arkansas judge has ever made a proper and official determination of probable cause and suggests that the probable cause determination was not made by a neutral and detached magistrate as required by *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Petitioner further argues that this court should look behind the face of the extradition documents and reassess the issue of probable cause.

■ Petitioner's argument is based on speculation and innuendo. Without evidence, petitioner argues that the judge who made the probable cause determination, and whose affidavit is included in the documents, must be considered "handpicked by the prosecutor" "doing the prosecutor a favor" and was "not acting in a judicial role". Petitioner appears to be saying that because Judge Langston tried the Daniel Remeta case in Arkansas, he is automatically biased and incapable of rendering a fair, neutral and detached finding. This court finds petitioner's argument lacking in substance.

Judge Langston's sworn affidavit clearly states that he reviewed the affidavits of the police officer and the prosecuting attorney and made a determination that probable cause exists to support the charge. Judge Langston's familiarity with the Daniel Remeta case does not, in and of itself, bias him in this case.

■ Petitioner's argument that the probable cause determination fails because it was made long after the warrant was issued is equally unpersuasive. There is no requirement that affidavits supporting probable cause must be made prior to the issuance of a warrant. *Hill v. Miller,* 195 Colo. 370, 578 P.2d 655 (1978). 31A Am.Jur.2d *Extradition* § 83 (1989). Whether affidavits supporting probable cause are executed prior to or subsequent to the charging document is immaterial, providing that the extradition documents viewed in their entirety establish probable cause that the person to be extradited committed the offense. *Wood v. Leach,* 189 Colo. 361, 540 P.2d 1084, 1085 (1975); *Garrison v. Smith,* 413 F.Supp. 747, 755 (N.D.Mich.1976).

In *In re Habeas Application of Danko,* 240 Kan. 431, 731 P.2d 240 (1987), the court was faced with a strikingly similar situation where an Arkansas judge made a finding of probable cause after the arrest warrant was issued, but prior to the issuance of the requisition for the governor's warrant. The court held that "a judicial determination that probable cause exists has been made in Arkansas" and no further inquiry may be made. *Danko,* 731 P.2d at 245. The asylum state courts are bound by the demanding state's determination of probable cause "since the proceedings of the demanding state are clothed with the traditional presumption of regularity." *Doran,* 439 U.S. at 290, 99 S.Ct. at 536.

■ The asylum state may not make a second probable cause inquiry when the extradition documents are found to be in order and when they establish that there was a finding of probable cause in the demanding

---

3. The procedure by which extradition is to be implemented is codified at 18 U.S.C. § 3182.

state. *Gee*, 912 F.2d at 418. Furthermore, if sufficient facts are set out in the extradition request which would support a finding of probable cause, the asylum state is not required to insist on proof that such a finding had been made in the demanding state, but rather could infer from the existence of such facts and the demand for extradition itself that a finding of probable cause exists. *Id.* The court finds that a proper probable cause finding was made in the State of Arkansas and this court will not revisit that issue.

*Issue 2*

■ Petitioner's second argument is that the decision by the State of Arkansas to prosecute her after years of full knowledge of the evidence against her is presumptively vindictive. Specifically, petitioner charges that the Arkansas authorities instituted extradition proceedings against her only after she had exercised her constitutional right to seek reversal of her Kansas convictions.

Petitioner properly notes that a defendant may not be punished for exercising her constitutional rights and challenging her conviction. *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969), stands for the proposition that a retaliatory motivation by the government to enhance punishment against an individual who properly exercises her constitutional rights is a violation of due process (judge who imposes harsher sentence on defendant after retrial must affirmatively state the reasons for the imposition).

Petitioner's argument is seriously diluted by the fact that Arkansas tried on two previous occasions to gain temporary custody of her. Kansas executive or judicial officials thwarted those attempts, preferring to allow petitioner to exhaust her pending judicial remedies in this state.

Petitioner correctly asserts that it is unnecessary for her to show actual vindictiveness, but rather that a presumption of vindictiveness is sufficient. However, her assertion that all that is required is a minimal appearance of vindictiveness misstates the requirement.

In this circuit, the test for whether a defendant is entitled to a presumption of vindictiveness is succinctly and clearly articulated in *U.S. v. Raymer*, 941 F.2d 1031, 1042 (10th Cir.1991).

"There is no vindictiveness as long as the prosecutor's decision is based upon the normal factors ordinarily considered in what course to pursue, rather than upon genuine animus against the defendant for an improper reason or in retaliation for exercise of legal or constitutional rights." *Id.*

"Our inquiry must be whether, 'as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right.'" *Id.*

In *U.S. v. P.H.E.*, 965 F.2d 848, 858 (10th Cir.1992), the court stated that the *Raymer* analysis is pragmatic and designed to be utilized on a case by case basis.

In this case, the State of Arkansas on two previous occasions sought to gain temporary custody of petitioner and both times were blocked in those attempts, once by then Governor John Carlin and once by now retired Supreme Court Justice Harold Herd. According to the record before this court, a detainer lodged by Arkansas against petitioner was still in place in 1991, prior to petitioner's retrial and acquittal, and interest was expressed in gaining custody of petitioner to bring her to trial on charges in Arkansas.

Petitioner has cited no cases, and the court's research has produced none, which suggest that a sister state is precluded from pursuing extradition of a defendant to stand trial on crimes committed in that state after the defendant is released from conviction of a separate crime in the first state. Such a conclusion is unreasonable and would only serve to undermine the oft stated purpose of the Extradition Clause of "bringing the fugitive to justice."

In addition, the facts in this case show that the State of Arkansas had continued interest in petitioner over the course of the years. The prosecutor's behavior, over the years, and his decision at this time, appears to this

court to be "based upon the normal factors ordinarily considered in determining what course to pursue." *Raymer,* 941 F.2d at 1042.

*Issue 3*

█ Petitioner's third argument is that the extradition documents are contradictory, not in order and that the governor of Kansas and the court should look behind the documents to make certain determinations. These include: what facts are true and what facts are false; whether petitioner should be charged with a crime; whether petitioner can be convicted of capital murder if she did not pull the trigger; whether she was an active participant or just in the car; and whether witnesses will testify to this or to that. In other words, petitioner is asking this court to try the facts and to conclude that there is no case against her. This the court cannot and will not do.

First, this court is limited in its review once the governor has signed the warrant. Specifically, the law states:

"a governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met." *Doran,* 439 U.S. at 289, 99 S.Ct. at 535.

Second, the narrow bounds of extradition proceedings prevent a court from engaging in determining matters which must be decided in the demanding state.

"As we have repeatedly held, extradition proceedings ... are ... not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party. [citations omitted]. Those inquires are left to the prosecutorial authorities and courts of the demanding State, whose duty it is to justly enforce the demanding State's criminal law...." *California,* 482 U.S. at 407–08, 107 S.Ct. at 2438–39.

Petitioner's argument that Governor Finney should have exercised her discretion and investigated the demand pursuant to K.S.A. 22–2704 is perplexing.

K.S.A. 22–2704 provides, in relevant part: "... the governor may call upon the attorney general or any prosecuting officer in this state to investigate or assist in investi-

gating the demand, and report to him the situation and circumstances of the person so demanded, and whether he ought to be surrendered."

The record reflects that the governor did enlist the aid of the Attorney General in reviewing the documents. That neither the governor nor the Attorney General came to the conclusion that petitioner desired is not relevant. The governor properly enlisted the Attorney General's opinion.

Petitioner's suggestion that this court in some fashion should remand the case to the governor to exercise her discretion is not tenable. Neither will the court substitute its discretion for that of the governor. The issues which petitioner presents in this claim must be resolved in the State of Arkansas.

*Issue 4*

█ Petitioner's final claim is that she is not a fugitive from justice because she left the State of Arkansas involuntarily and under force or compulsion exerted by Daniel Rameta.

"A person who commits a crime within a State, and withdraws himself from such jurisdiction without waiting to abide the consequences of such act, must be regarded as a fugitive from justice of the State whose laws he has infringed." *U.S. v. Appleyard,* 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161 (1906) quoting *In re Vorhees,* 32 N.L.J. 141, 150 (1867).

The legal definition of fugitive, while remaining consistent over the years, has been refined:

"A fugitive from justice is a person who is 1) suspected of or has been convicted of committing a crime, 2) sought by the jurisdiction so that the jurisdiction may subject the person to its criminal justice system, and 3) has [sic] left the jurisdiction is found within the boundaries of another." *Gee,* 912 F.2d at 418.

█ The motive or reason of an accused for leaving the demanding state is immaterial in an extradition proceeding. *Hogan v. O'Neill,* 255 U.S. 52, 55, 41 S.Ct. 222, 223, 65 L.Ed. 497 (1921). An individual brought into the asylum state involuntarily, unlawfully, or

under compulsion is still a fugitive from justice. *Innes v. Tobin,* 240 U.S. 127, 135, 36 S.Ct. 290, 292–293 (1916).

Even if petitioner's contention that she was battered by Remeta and only left Arkansas under his personal compulsion is true, the law does not provide an exception to the standard classification of a fugitive. In *Glass v. Becker,* 25 F.2d 929 (9th Cir.1928), a murder suspect fled the state because it appeared he was the target of violence by an angry mob. The court found that fear for his personal safety was not sufficient to justify his flight from justice.

Similarly an African American convicted of involuntary manslaughter was granted a new trial and released on bail. Hearing that a mob was coming to lynch him, he fled the state. *People ex rel. Heard v. Babb,* 412 Ill. 507, 107 N.E.2d 740, 741–42 (1952). The court held that whatever his reasons for leaving the state, under the law he was still a fugitive from justice.

Petitioner's position that she left the State of Arkansas under compulsion and force exerted by Daniel Remeta may well be true. Even if true, however, such facts do not change her status as a fugitive from justice for extradition purposes.

 Petitioner also argues that the language of K.S.A. 22–2705 supports her contention that if she left the state under compulsion she is not a fugitive from justice and that the governor has discretion in surrendering her to Arkansas. K.S.A. 22–2705 provides in relevant part:

> "The governor of this state may also surrender on demand of the executive authority of any other state any person in this state who is charged ... with having violated the laws of the state whose executive authority is making the demand, even though such person left the demanding state involuntarily."

Petitioner claims that because of this statute, Governor Finney had discretion in surrendering her to Arkansas and that the governor erred in believing that the extradition was mandatory. Petitioner cites no authority that the statute should be interpreted in this fashion.

Petitioner acknowledges that under the Uniform Criminal Extradition Act, 11 U.L.A. 159, 160 (1936), which is identical to K.S.A. 22–2705, the Commissioner's Note to Section 5 states that the terms compulsion or involuntary nature of the departure relate to compulsion by governmental authority. There is no evidence in the statute or in the case law that departure from a state involuntarily or by compulsion was ever envisioned to include the type of personal compulsion petitioner claims Remeta exerted over her.

Petitioner contends that because Kansas did not adopt the Commissioner's note into K.S.A. 22–2705, the note should be ignored and her expansive construction of the definition of leaving the state involuntarily or under compulsion should be accepted. Petitioner's argument is not persuasive.

K.S.A. 22–2729 directs that the Kansas Uniform Criminal Extradition Act foster the purpose of the national act and that its adoption in Kansas is to insure uniformity among those states which also adopt the act. If one state could expand so widely the meaning of a provision within the act, such as petitioner suggests, the purpose of the act would clearly be frustrated.

Petitioner's claim that *Kennon v. State,* 248 Kan. 515, 809 P.2d 546 (1991), is controlling is equally unpersuasive. *Kennon* concerned an individual who absolutely was not in the demanding state at the time the crime was committed. The statutory provision under which the *Kennon* extradition was decided is K.S.A. 22–2706 and authorizes the governor to exercise her discretion before honoring another state's extradition demand. Petitioner's comparison of *Kennon* with her own case is misplaced.

Petitioner is a fugitive from justice because she was in Arkansas when the crime was committed. Why she left the state is of no importance in this instance. The statutes, the cases and the facts support this finding.

Pursuant to the holding and limitations of *Doran,* this court concludes: (1) that the extradition documents are in order; (2) that the petitioner has been charged with a crime; (3) that the petitioner is the person named in the extradition request; and (4) that petitioner is a fugitive from justice.

The court wishes to make a personal comment on this case. As noted earlier, this is not the first time petitioner has been before this court. The court believed then, and it believes now, that petitioner was deprived of her constitutional rights in her first trial and was entitled to a new trial. That new trial, where all the evidence was finally presented, resulted in her acquittal.

Today's decision has not been easy; it has come after much struggle and considerable debate. If the court chose to ignore the precedent of the law before it, its decision would likely be different, for the court believes and the jury in Topeka, Kansas, found, that petitioner deserves the right to pick up the pieces of her life and move forward. However, the court is bound by its oath to uphold the law, and the law, as this court views it, requires the result herein ordered.

IT IS THEREFORE BY THE COURT ORDERED that the petition for writ of habeas corpus is dismissed and all relief denied.

IT IS FURTHER ORDERED that all state action pursuant to the proceedings allowing the extradition of the petitioner to the State of Arkansas should be and, the same hereby is, STAYED for 10 days from the date of the filing of this Memorandum and Order to allow petitioner time to file a Notice of Appeal.