44 F.3d 904
 John R. KENNON, Petitioner-Appellant,
v.
Mike HILL, Sheriff, of Sedgwick County, Kansas; Robert T.
Stephan, Attorney General of the State of Kansas,
Respondents-Appellees.
J.C. WOODALL, Petitioner-Appellant,
v.
Mike HILL, Sheriff of Sedgwick County, Kansas; Robert T.
Stephan, Attorney General of the State of Kansas,
Respondents-Appellees.
 Nos. 93-3252, 93-3257.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 24, 1995.
 
 Charles D. Dedmon, Asst. Federal Public Defender for the District of Kansas, Wichita, KS (Charles D. Anderson, Federal Public Defender for the District of Kansas, with him on the briefs), for petitioner-appellant John R. Kennon in 93-3252.
 Roger L. Falk of Law Office of Roger L. Falk, P.A., Wichita, KS, for petitioner-appellant J.C. Woodall in 93-3257.
 Debra S. Peterson, Asst. Dist. Atty., Wichita, KS (Debra S. Byrd, Asst. Dist. Atty., and Nola Foulston, Dist. Atty., on the brief) for respondents-appellees.
 Before EBEL, McKAY, and REAVLEY,* Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 The petitioners, J.C. Woodall and John R. Kennon, have filed for habeas corpus relief, seeking to avoid extradition to Alabama without some assurances that they will not be subjected to the death penalty in Alabama. Because they present some identical issues, their petitions have been consolidated for appeal.
 
 
 2
 The pertinent facts alleged by the State of Alabama may be summarized as follows. Mr. Woodall approached Mr. Kennon in Kansas and attempted to hire him to kill Mr. Woodall's mother in Alabama. Mr. Kennon refused to perform the killing himself, but introduced Mr. Woodall to Freddie Glenn Pope, who subsequently carried out the murder of Mrs. Woodall, also wounding Mr. Woodall's brother in the process. All of the contacts between Mr. Kennon, Mr. Woodall and Mr. Pope took place in Kansas.
 
 
 3
 A grand jury in Alabama indicted both Mr. Woodall and Mr. Kennon with two counts of capital murder and one count each of capital murder and felony assault. Under Alabama law, the offense of capital murder is punishable by death. Ala.Code Sec. 13A-5-39(1) (1982); Ala.Code Sec. 13A-5-40 (1991 Supp.).
 
 
 4
 Mr. Woodall and Mr. Kennon were arrested in July of 1989 in Kansas. Governor Hunt of Alabama sought extradition of both men as fugitives from justice. Governor Mike Hayden signed extradition warrants for each. Both men sought habeas corpus, and these warrants were ultimately quashed when it was determined that the men were not fugitives from justice because they had personally conducted no criminal activities in the State of Alabama. Governor Hunt then made a second request for extradition on the basis that the men's activities in Kansas had caused crimes in Alabama. The new Governor of Kansas, Joan Finney, signed new nonfugitive extradition warrants in June of 1991.
 
 
 5
 Messrs. Kennon and Woodall again filed petitions for habeas corpus, alleging several grounds for relief. These petitions were denied by the Kansas district court. The denials were affirmed by the Kansas Court of Appeals, and the Supreme Court of Kansas declined to review these decisions. Messrs. Kennon and Woodall then sought further habeas corpus relief in the United States District Court in Kansas, which also denied them relief. They then appealed.
 
 
 6
 The primary common basis for these petitions is the fact that Governor Finney placed the following language on each of the extradition warrants:
 
 
 7
 Whereas, as Governor of Kansas, I am acceding to the request of the State of Alabama upon condition that [petitioner], in the event of conviction of the aforesaid crimes, shall not receive the death penalty.
 
 
 8
 This attempt by Governor Finney to condition the extradition of these two nonfugitives is apparently unprecedented in American history and raises issues of first impression in this court. However, the validity of the condition is not at issue in this proceeding. The Kansas Court of Appeals held that Governor Finney had the authority to attach the condition on the extradition warrant: "Appellant cites no authority for the position that the governor may not attach a condition to a discretionary grant, and we have found none." Kennon v. Hill, Memorandum Opinion of the Court of Appeals of the State of Kansas, No. 66,868, at 3 (April 10, 1992). (Kennon Mem.Op.) The Kansas court apparently reasoned that because the Governor has the discretion to grant or deny extradition in nonfugitive cases, the lesser included power to grant extradition with an attached condition could be implied. We are bound by that determination.
 
 
 9
 Since the Kansas courts have held that the Governor had the power to place the condition on the warrant, the next question is: What rights, if any, does the condition create in the defendants? And if any rights have been created, are they currently enforceable, or are they rights which can only arise in the future?
 
 
 10
 Perhaps the most useful way to look at the condition is to use contract terminology. The appellants would have us read the condition as a condition precedent. Under this interpretation, the warrant could not be executed without an explicit promise from Alabama that they would comply with the condition because Kansas would have retained the right to withhold delivery of the petitioners pending satisfaction of the condition. The main basis for these habeas corpus petitions is that Alabama has not made such an explicit promise. Thus, the petitioners argue that Kansas should not be allowed to hold them for eventual transfer to the Alabama authorities.
 
 
 11
 In contrast, the Kansas authorities argue that the condition is a covenant or condition subsequent. Under this reading, the contract rights of Mr. Woodall and Mr. Kennon would not vest until they are in the hands of the Alabama authorities. By assuming custody of the petitioners on the basis of the conditional warrant, Alabama would implicitly promise to abide by the condition. A subsequent failure to uphold this implicit agreement would then give rise to a ripe claim. At this time, however, no explicit promise is necessary because acceptance of the prisoners would, in itself, be an implicit promise.
 
 
 12
 The Kansas Court of Appeals has apparently taken the latter view. Although the opinions do contain some contradictory language, when read together it is clear that they have rejected Mr. Woodall's and Mr. Kennon's views. In Mr. Kennon's case they stated:
 
 
 13
 The governor's warrant is presumed valid and regular in all respects.... The receiving governor's warrant does not require any promise by Alabama to comply with the condition before rendition. Petitioner has not sustained the burden of showing that Alabama will not comply with Governor Finney's condition. If it does not, petitioner may have a cause of action of a contract nature in some other court at some other time, but this cannot prevent his rendition to Alabama authorities by Kansas.
 
 
 14
 (Kennon Mem.Op. at 4). In response to Mr. Woodall's petition, the Kansas court made a similar statement: "The warrant does not condition extradition upon receipt of an explicit promise from Alabama authorities that Woodall will not receive the death penalty." Woodall v. Hill, Memorandum Opinion of the Court of Appeals of the State of Kansas, No. 67,121, at 16 (Oct. 23, 1992) (Woodall Mem.Op.). Again, the court opined, "Woodall may have a cause of action or potentially a federal habeas corpus action" if Alabama does not comply. Id.
 
 
 15
 Absent an error of constitutional magnitude, we are bound by the Kansas court's interpretation of Kansas state law, including the meaning of the Governor's extradition warrant. See Clemons v. Mississippi, 494 U.S. 738, 747, 110 S.Ct. 1441, 1447, 108 L.Ed.2d 725 (1990). Mr. Woodall and Mr. Kennon contend that the conditional language has been rendered meaningless under the Kansas courts' interpretation. They suggest that the condition has given them a liberty interest, and that the failure to give current meaning to their rights amounts to a denial of due process of law.[1] Although we might have interpreted Governor Finney's condition differently, we do not find the Kansas court's interpretation to be so arbitrary and irrational as to rise to the level of a constitutional violation. Thus, we are unable to discern any basis to provide relief to Mr. Kennon and Mr. Woodall at this time.
 
 
 16
 The Kansas court also stated that "[Mr. Kennon] has not sustained the burden of showing that Alabama will not comply with Governor Finney's condition." (Kennon Mem.Op., at 4). Mr. Kennon argues that placing this burden of proof on him violated due process because under the circumstances (his incarceration in Kansas), it was impossible for him to make such a showing. We disagree. Rather than proving a due process violation, Mr. Kennon's inability to make such a showing merely demonstrates that his claim is too speculative at this juncture. Alabama has not even tried Mr. Kennon, much less sought capital punishment. And even if he is eventually convicted and Alabama asks for a death sentence, there is no guarantee that it will be imposed, which is the only action that Governor Finney's condition seeks to prevent. It is not a violation of due process for the Kansas court to presume, absent convincing evidence to the contrary, that another state will comply with a condition on a facially valid extradition warrant, issued at the discretion of the Kansas Governor upon the request of a sister state's governor.
 
 
 17
 Mr. Woodall also makes an independent due process claim. As noted earlier, the warrant that is the subject of this case was not the first extradition warrant issued for Mr. Woodall. The first warrant was invalidated because it identified Mr. Woodall as a fugitive, when in fact he had not committed criminal acts within the State of Alabama. Mr. Woodall claims that his right to due process was violated because, when the second warrant was issued, he was not afforded the full process mandated by the Kansas statute governing nonfugitive extraditions. Kan.Stat.Ann. Sec. 22-2710. This statute requires that a person held pursuant to an extradition warrant shall have an immediate hearing in a state court where he shall be informed of the charges against him and of his right to counsel. It is conceded by Kansas that this procedure was not fully complied with in Mr. Woodall's case. However, the Attorney General argues that Mr. Woodall was not prejudiced by this lapse because he had previously received such a hearing under the warrant signed by Governor Hayden, and henceforth has been represented by counsel and has been fully aware of the charges against him. All three courts that have reviewed this claim have agreed that Mr. Woodall was not prejudiced. We find no error in this conclusion.
 
 
 18
 Mr. Woodall has also raised questions concerning the validity of his extradition documents. The Supreme Court of the United States has held:
 
 
 19
 Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.
 
 
 20
 Michigan v. Doran, 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978).
 
 
 21
 Although Doran was decided in the fugitive extradition context, the Kansas Court of Appeals has determined that the holding should also apply in the nonfugitive context (Woodall Mem.Op., at 14-15), based on a previous Kansas Supreme Court opinion involving Mr. Kennon. Kennon v. State, 248 Kan. 515, 809 P.2d 546 (1991).
 
 
 22
 Mr. Woodall has raised two issues based on the Doran factors. First, Mr. Woodall claims his extradition documents on their face are not in order. Mr. Woodall also contends that he is not the person named in the documents. Both of these claims were thoroughly reviewed and rejected by the district court. We have also reviewed these claims and find no error in the district court's opinion.
 
 
 23
 The denials of the petitions for writs of habeas corpus are AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Mr. Woodall and Mr. Kennon argue that the adverse implications of Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952) (reaffirmed in United States v. Alvarez-Machain, --- U.S. ----, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992)), will forestall their attempt to base a pseudo-contractual or due process claim upon the governor's condition. Frisbie held that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction'." Id. at 522, 72 S.Ct. at 511. Messrs. Woodall and Kennon argue, with some force, that, if a defendant kidnapped by a state cannot base a claim upon the crimes committed against him by the state, they will be likewise unable to assert their due process claims against Alabama for simply breaching a contract to which they are third-party beneficiaries. Messrs. Woodall and Kennon contend that, in order to ensure that Alabama does not completely ignore the condition, they are entitled to some assurances of compliance from the Alabama authorities before being delivered into their care
 If we agreed that Alabama would be free to elide the Governor's condition, Messrs. Woodall and Kennon might well be able to frame a ripe claim alleging a deprivation of a valid liberty interest without due process of law. The facts support the conclusion that the Governor of Kansas created a liberty interest by imposing the condition upon the extradition warrant. "[A] State creates a protected liberty interest by placing substantive limitations on official discretion." Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). These limitations must be "explicitly mandatory" and must create "substantive predicates" that guide discretion. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460-63, 109 S.Ct. 1904, 1908-10, 104 L.Ed.2d 506 (1989). A Kansas court has determined that the Governor of Kansas validly conditioned the extradition warrant, and we are bound by that decision. Nothing in the record suggests that the condition was precatory. Thus, it appears that "substantive limitations"--albeit limitations that operate as conditions subsequent--have been placed upon "official discretion." If Frisbie in fact were to preclude Messrs. Kennon and Woodall from attempting to enforce their rights in Alabama, then the Kansas court's interpretation of the condition as a condition subsequent enforceable only at a later date would effectively bar Messrs. Kennon and Woodall from relief. This would create a procedural deprivation counter to Cleveland Board of Education v. Loudermill, 470 U.S. 532, 540-42, 105 S.Ct. 1487, 1492-93, 84 L.Ed.2d 494 (1985), which held that a state may not take away with one hand what it gives with the other.
 However, we conclude that Frisbie would not allow Alabama to abrogate with impunity the condition expressed in the extradition warrant. The facts of Frisbie are devoid of the pseudo-contractual elements of bargain and implicit agreement that are present here. A Kansas court has held that the governor's condition is a valid condition subsequent, and we do not think that Alabama can simply disregard the implications of its acceptance of Messrs. Woodall and Kennon under the conditioned warrant. As we find that Frisbie does not control the unique facts of this case, Messrs. Woodall and Kennon have yet to be deprived of their (as yet unvested) liberty interests. Their due process claims are entirely conjectural, and therefore unripe.