The Honorable Kenny A. Wilk State Representative, 42nd District State Capitol, Room 174-W Topeka, Kansas 66612
Dear Representative Wilk:
You request our opinion on the proper role of a county sheriff involved in taking custody of persons wanted by another state and found in a county wherein a federal prison is located. You inform us that once the person has completed their federal prison sentence and is to be released by federal authorities, the Leavenworth county sheriff has followed the practice of taking custody, (on federal property of the United States penitentiary) of those inmates who have a detainer or warrant filed against them by authorities with other states. Once the sheriff takes such custody, the inmate is brought before a Kansas district court judge, where a voluntary waiver of extradition is presented to the inmate for signature. If the inmate refuses to cooperate with the extradition process, he or she is placed in the county jail until such time as the matter is resolved or extradition can occur. If a prisoner contests extradition, the person may remain in the county jail for some time and the resulting costs have to date been borne by the county.
You indicate that Kansas is one of only eight states that follows this procedure. You note that some federal inmates are wanted in the same state in which the federal government originally prosecuted and were moved to Kansas at the discretion of federal authorities. You therefore question the legal standing of an inmate who is present in Kansas. You additionally inform us that some federal inmates are wanted by other states because of parole violations and you ask us to answer the following specific questions:
 "1. Is there a legal requirement that mandates the Leavenworth County Sheriff Department take custody of inmates of the United States Penitentiary (USP) in Leavenworth, KS, who have a detainer filed against them from some other state and are being released from their federal sentence?
 "2. Is there a legal requirement that precludes foreign states from making their own arrangements to take custody of an inmate on United States Penitentiary property?"
The issues involved are largely addressed in K.S.A. 22-2701 et seq., 22-4101 et seq., 22-4301 et seq. and 22-4401 et seq. These acts set forth the proper procedures and circumstances whereby a person charged with another crime or wanted for parole violations may be detained by Kansas authorities. The applicable statutes and case law must be applied on a case by case basis to determine the facts and what statutory procedure should be followed in each situation.
Under K.S.A. 22-4401 et seq., Kansas has legislatively entered into an agreement with other states and the federal government. The parties to this agreement have promised to detain persons found within this state but sought by other states. See Sweat v. Darr, 235 Kan. 570, (1984). As stated in In the Matter of Lancaster, 19 Kan. App. 2d 1033 (1994), the agreement on detainers, K.S.A. 22-4401 et seq., applies to persons in one state who have criminal charges pending against them in another state when the sovereign state has an outstanding charge but has yet to convict the individual in question. A detainer allows the authorities in one state to "hold" a person for another sovereign.
A detainer may arise either because the prisoner in question notifies the respective authorities of charges pending in another matter and requests a speedy trial by the appropriate court or because officials in one state notify officials in another that a person being sought may be found in their state. If the person being detained challenges extradition, the process may take longer and thus the detention period may be prolonged. K.S.A. 22-4403 requires public officials, including county sheriffs, to enforce the agreement on detainers and cooperate with parties in effectuating its purpose. The purpose of the act is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. . . . It is the further purpose of this agreement to provide such cooperative procedures." K.S.A.22-4401, article I. [The uniform mandatory disposition of detainers act, K.S.A. 22-4301 et seq., is similar, but applies to prisoners incarcerated in Kansas with charges pending against them in Kansas. Seealso State v. Rodriquez,, 254 Kan. 768, 771 (1994).]
Once someone is detained, or "held," by authorities in one state on behalf of another sovereign, the next step in the process is to move the person in question to the jurisdiction for whom they were detained. In cases involving another state, this process is called extradition.
Extradition is a principle addressed in the United States constitution:
 "A person charged in any State of Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime." Art. IV, sec. 2.
The extradition clause in the United States constitution further enables each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. Biddinger v. Commissionerof Police, 245 U.S. 128, 132-33, 38 S.Ct. 41, 42-43, 62 L.Ed. 193
(1917).
 "The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus `balkanize' the administration of criminal justice among the several states. . . . [T]he courts of an asylum state are bound by, Art. IV, Sec. 2 . . . by [18 U.S.C.] Sec. 3182, and, where adopted, by the Uniform Criminal Extradition Act." Michigan v. Doran, 439 U.S. 282, 287, 99 S.Ct. 530, 534, 58 L.Ed.2d 521 (1978). See also Puerto Rico v. Branstad, 483 U.S. 219, 287, 288, 107 S.Ct. 2802, 2806-07, 97 L.Ed.2d 187 (1987).
K.S.A. 22-2701 et seq., the Kansas uniform criminal extradition act, implements the requirements of the extradition clause. The uniform extradition act was enacted the year after the agreement on detainers act and it sets forth the procedures for extradition of prisoners wanted by another state but found within Kansas. See Dunn v. Hindman,18 Kan. App. 2d 537 (1993).
"A person who commits a crime in another state and flees to Kansas is subject to mandatory extradition under K.S.A. 22-2702." Kennonv. State, 248 Kan. 515, (1991). K.S.A. 22-2702 provides:
 "Subject to the provisions of this article, the provisions of the constitution of the United States controlling, and any and all acts of congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."
Notification of a detainer may be provided by the prisoner or law enforcement authorities. A warrant can exist prior to detainer or be sought afterwards in accordance with K.S.A. 22-2714:
 "The arrest of a person may be lawfully made also by any peace officer or private person without a warrant upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one year, but when so arrested the accused must be taken before a judge or magistrate with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest as in the preceding section; and thereafter his answer shall be heard as if he had been arrested on a warrant."
K.S.A. 22-2713 provides similar authority for persons wanted for parole violations. Extradition to another state requires a warrant issued by the governors of the two involved states. Obtaining such warrants may take up to 90 days. See K.S.A. 22-2715 and 22-2717. A governor's warrant issued under K.S.A. 22-2708 requires county authorities to take custody of the accused person and immediately deliver the accused to the custody of agents or officials from the demanding state. K.S.A. 22-2715; In ReHabeas Corpus Application of Lane, 17 Kan. App. 2d 476, 479 (1992). However, the person so arrested or detained may challenge the extradition process pursuant to the rights afforded them under K.S.A. 22-2710 or it may take some time to obtain a governor's warrant. Thus, there may be a delay in the removal from Kansas.
You do not indicate whether your question involves a warrant issued by the governor, by a Kansas district court, or from another state. However, in each situation, a Kansas sheriff has the duty to take custody of any person they locate who is the subject of an outstanding warrant. "The sheriff, in person or by his undersheriff or deputy, shall serve and execute, according to law, all process, writs, precepts and orders issued or made by lawful authority and to him directed. . . ." K.S.A. 19-812. Thus, a county sheriff may not knowingly ignore an outstanding warrant or charge. There is ample authority allowing and requiring county officials to cooperate with other states seeking to detain and ultimately extradite a person found in Kansas and wanted for a crime committed in another state. If the required procedures are followed, and particularly if another state makes the sheriff aware of an outstanding warrant and asks the sheriff to detain anyone on their behalf (even a former federal prisoner), a county sheriff may take custody of and house such a prisoner for the other state. If the governor or a court has issued a warrant, officers charged with effectuating the arrest must comply with the terms of that warrant and may not ignore duties imposed upon them by law.
If there is a delay in removing the person from Kansas the problem of cost to the county arises. The issue then becomes whether the county sheriff has any continuing duty to incarcerate or keep the person in question or whether the county has any recourse for recovery of resulting costs.
K.S.A. 22-2712 speaks to confinement in a county or city jail and states in pertinent part:
 "The officer or person executing the governor's warrant of arrest, or the agent of the demanding state to whom the prisoner may be delivered, may, when necessary, confine the prisoner in the jail of any county or city through which he may pass; and the keeper of such jail must receive and safely keep the prisoner until the officer or person having charge of him is ready to proceed on his route, such officer or person being chargeable with the expense of keeping."
K.S.A. 19-1917 specifically allows a county jail to be used for the safekeeping of any fugitive from justice from another state or territory. In addition, K.S.A. 19-811 requires and allows the sheriff to house prisoners in a county jail. Thus, once a sheriff lawfully takes custody of a person pursuant to their duties and rights as sheriff, it is proper that such a person be housed in the county jail until such time as they may be legally removed or released.
It appears that the cost of providing such a service to authorities of another jurisdiction may sometimes be shifted. A county sheriff is prohibited from personally recovering or asking for fees other than those provided for by law. See K.S.A. 19-821, 28-175. However, the county itself may consider seeking reimbursement from the requesting state or the defendant. In State v. Garrett, 14 Kan. App. 2d 8 (1989), the court found that extradition costs were taxable to the defendant under K.S.A.22-3801. See also State v. Higgins, 240 Kan. 756 (1987) and State v.Dean, 12 Kan. App. 2d 321 (1987). Under K.S.A. 22-2712 and K.S.A.22-4401 article V(h), the costs of keeping the prisoner may be charged to the demanding state.
This reading of the extradition act is further supported by K.S.A.19-1910, 19-1916 and 19-1930 which allow a county sheriff to charge for maintenance of certain prisoners being held on behalf of other entities. Finally, K.S.A. 19-1917 specifically states that a county jail may be used to safekeep a fugitive from another state and the jailer is entitled to and may be paid reasonable compensation by the officer demanding the custody of the same. This rule is altered if the concerned states have entered into a supplementary agreement providing for a different allocation of costs. See K.S.A. 22-4401, article V(h). It therefore appears that the ultimate fiscal responsibility for such county jail incarceration costs may be shifted or charged to the defendant or the demanding state seeking extradition.
You state your second question in terms of another state's control or authority over the person being released by federal authorities. You ask whether officials from another state may not just take custody of an individual present in Kansas. This question requires examination of constitutional principles and authority concerning the extent of personal jurisdiction that may be extraterritorially exercised by states acting outside their borders. Persons cannot be involuntarily detained or incarcerated by the government unless certain minimum standards are met. One such primary standard is jurisdiction. "To try a person for the commission of a crime, the trial court must have jurisdiction of both the subject matter and the person of the defendant." 21 Am.Jur.2d CriminalLaw § 338 (1981). Ordinarily, one state or sovereign entity cannot exercise its authority beyond its borders. Stated another way, authorities from one state may not enter Kansas and take involuntary custody of an individual present in this state without gaining some grant of jurisdictional authority in the territory or over the person in question.
Prior to taking action against a person, a state must first obtain jurisdiction over that person. When a person is not physically present within a state, the state seeking custody must therefore apply to a court having jurisdiction over the person in question. "A person is accused of several offenses triable by different courts, or of offenses against different sovereignties, the court or sovereignty first acquiring jurisdiction of the offender is entitled to retain it exclusively until its duty is fully performed or its law satisfied. However, the court of sovereignty so acquiring jurisdiction may waive its exclusive priority and surrender or lend the offender to another court or sovereignty." 22 C.J.S. Criminal Law § 151 (1989). "It is a general rule that one state or sovereignty cannot enforce the penal laws of another, or punish offenses committed in and against another state or sovereignty, and statutes are always to be construed with this principle." Id. at § 155. Thus, the foreign state seeking jurisdiction over the newly released former federal prisoner must lawfully obtain personal jurisdiction over that individual. The extradition act provides the procedure and authority for obtaining that jurisdiction. This procedure requires action by state authorities.
Individuals incarcerated in a federal penitentiary may argue the merits of the voluntariness of their presence within the state and may even contest Kansas personal jurisdiction over their persons. However, case law does not appear to favor this type of argument. See Hobson v. Crouse,332 F.2d 561(10th Cir. 1964); Devine v. Hand, 287 F.2d 687 (10th Cir. 1961); State v. Mick, 229 Kan. 157 (1981); State v. Ulriksen, 210 Kan. 795
(1972); State v. Eaton, 199 Kan. 610 (1967). A court's power to try a person for a crime or enter orders affecting a person is ordinarily not impaired by the fact that the person was involuntarily brought within the court's jurisdiction.
If a court or authorities in another state wish to exercise personal jurisdiction over an individual physically within this state, authorities from the other state may not just forcibly remove such a person. To do so could risk charges of kidnaping, violation of several closely guarded constitutional rights, and be contrary to the extradition act. The other state may not just "lure" the sought-after fugitive into the state.Ortega v. City of Kansas City, 659 F. Supp. 1201 (D.Kan. 1987). Rather, if a person is unwilling to voluntarily accompany officials for criminal prosecution by another state, application to the proper courts must be made and due process rules followed. See K.S.A. 22-2710. It is for that purpose that Kansas and other states have adopted various detainer and extradition acts. Under laws such as this, a person may be lawfully removed from one state to another.
We note that while a person is still on federal property the state seeking custody of the newly released person may request some detention assistance from federal authorities. However, absent a consensual agreement or federal law mandating such cooperation, the requesting state may not be able to obtain the assistance of federal authorities, particularly where federal jurisdiction over the person has ceased.
It is our opinion that a county sheriff has the authority and the duty to comply with a warrant for detainer or arrest properly issued by a court or the governor acting under K.S.A. 22-2701 et seq. and must detain persons in accordance with the terms of K.S.A. 22-4401 et seq. Absent a warrant issued for arrest, a county sheriff must cooperate with authorities from other states in accordance with K.S.A. 22-4403, and may take custody of a person wanted by another state. The resulting costs of incarceration incurred by a county detaining a person on behalf of another state may be requested from the demanding state or the defendant, pursuant to K.S.A. 19-1917, K.S.A. 22-3801, K.S.A. 22-4401
article V(h), or K.S.A. 22-2712. The state seeking ultimate custody of the person detained in Kansas must somehow obtain or possess personal jurisdiction over the individual in question before taking physical custody of a person found outside their boundaries. Such jurisdiction may be accomplished pursuant to the provisions of the detainer act and the extradition act. States may not extraterritorially act without first obtaining jurisdiction.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:jm